### JOHN M. MACK v. AMERICAN ELECTRIC TELEPHONE COMPANY.

Argued June 2, 1909—Decided November 8, 1909.

1. A detached defaulted coupon is a separate cause of action independent of the bond.
2. Where the condition of a bond, limiting the right of action thereon to the trustee appointed to administer the trust agreement under which the bonds were issued, applies only to the option given to have the bonds declared due in case of default, and not to the right to collect the bond or the coupons already due, a bondholder having unpaid coupons can institute an action to recover the amount due on the coupons.

On case certified from the Camden Circuit.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the plaintiff, *John Meirs* and *McDermott & Enright.*

For the defendant, *Frank S. Katzenbach, Jr.*

The opinion of the court was delivered by

TRENCHARD, J. This action was brought by a debenture bondholder of the defendant company to recover the amount of forty defaulted interest coupons which have been detached from the bonds, but are still in the hands of the bondholder.

The defendant pleaded the general issue, and specially a condition of the bond from which the coupons have been detached, restricting individual action.

The cause came on for trial at the Camden Circuit. A jury was waived and the evidence submitted in form of an agreed state of facts.

The trial judge reserved decision and certified to this court for our advisory opinion the following questions:

"*First.* Whether an unpaid detached coupon in the form on which the plaintiff has declared in the hands of a bond-

holder who has detached the same, is still a part of the bond from which detached so as to make the holder of said detached coupon a bondholder within the meaning of the conditions of the bond?

"*Second.* Whether a bondholder having unpaid coupons can institute an action at law to recover the amount due on said coupons independent of the trustee appointed to administer the trusts of the agreement under which said bonds were issued without having first joined in a request with holders of one-third of the outstanding bonds to the trustee to act and said trustee shall have refused to act?"

Each of the coupons sued upon called for the payment by the American Electric Telephone Company to the bearer on a date named in each, at the office of the Knickerbocker Trust Company, in the city of New York, of the sum of $30 for six months' interest then due on its debenture six per cent. sinking fund gold bond "subject to the conditions of said debenture."

The bonds from which such coupons were detached on their face were to mature April 1st, 1920, and each contained the following condition: "This debenture bond is issued and accepted upon the express agreement that the conditions endorsed hereon are part hereof and are accepted as part of the consideration herefor."

The conditions endorsed upon the bonds may be summarized and stated where material as follows: (1) Limiting aggregate issue. (2) Providing for registration. (3) Providing for a sinking fund and for the redemption of bonds therefrom by purchase or by lot. (4) Reservation of right to redeem entire issue at one hundred and five per cent. and interest. (5) "In case the company shall at any time hereafter execute any mortgage upon its property or franchises to secure the payment of debenture or other bonds hereafter issued, the holders of the debenture bonds of the present series shall be entitled *as they respectively elect:* (*a*) To exchange their debenture bonds of the present series for an equal amount at par of such new debenture or other bonds; or (*b*) to declare the principal of their debenture bonds of the present series forthwith due,

and simultaneously with the issue of such new debenture or other bonds, to receive payment of their debenture bonds of the present series at the price of par and accrued and unpaid interest." Paragraph 6 provides that "in case the company makes default in the payment of any interest maturing on its said debenture bonds and such default continues for thirty days, or in case it makes default in any payment into the sinking fund and any such default continues for the period of six months, then, and in either of such events, said Knickerbocker Trust Company, acting as the agent or trustee of the holders of said debenture bonds then outstanding (hereby irrevocably appointed as such agent or trustee by the company, the maker hereof, and each person who shall take and hold one or more of the debenture bonds of this series) shall, if requested so to do in writing by the owners of one-third in amount of said debenture bonds then outstanding, declare the principal of all said outstanding debenture bonds to be, and the company, the maker hereof, agrees with the trust company, for the benefit of the holders of said debenture bonds, that the same shall forthwith become immediately due and payable. In case of any such default as aforesaid, said trust company shall proceed when and in such manner as requested in writing by the holders of one-third in amount of said debenture bonds to enforce the rights of the debenture bondholders, said trust company acting as the agent or trustee appointed as above provided, of the holders of all said outstanding debenture bonds. *No debenture bondholders shall have the right to take any action or commence or conduct any proceeding in enforcement of said debenture bonds independently of said trust company unless he shall first have joined with holders of one-third of the outstanding debenture bonds in a request to the trust company to act and such request shall have been refused.* * * * It is the intention * * * that in case of default *as above mentioned,* payment thereof shall be enforced by and through said Knickerbocker Trust Company, *as agent or trustee under an express trust.*" * * *

Paragraph 7 provides for the form of interest coupon.

We think that the detached defaulted coupons are separate causes of action independent of the bond.

A bond and the coupons are not parts of one debt—they are separate debts, and may be held by different persons, and suit on the one does not bar suit on the other. *Jones Company* v. *Guttenberg,* 37 *Vroom* 659, 666.

It follows, therefore, that the unpaid detached coupons in question are not still a part of the bond from which they were detached, so as to make the holder thereof a bondholder within the meaning of the conditions of the bond.

We think that the restriction in paragraph 6 of the conditions, requiring a concert of one-third of the bondholders, does not apply to a suit upon the defaulted interest coupons.

The restrictive language of the sixth paragraph applies only to the remedies given to the bondholders on the bond in that paragraph, in the event of default before the maturity of the bond (1) in the payment of interest, and (2) in the annual payment to the sinking fund. The rights otherwise secured to the bondholders are (1) to receive payment of the principal of the bond upon maturity, April 1st, 1920; (2) to receive payment of interest thereon according to the tenor of the several interest coupons; (3) in the event that the company at any time thereafter executes a mortgage upon its property or franchises to secure bonds thereafter to be issued, then the holders of the present bonds have the additional right "as they respectively elect" either to exchange their bonds for mortgage bonds or to declare the principal of their bonds of the present series forthwith due and to receive payment therefor.

All of the last mentioned rights are given in absolute terms as individual rights. There is nothing in the bond nor in the conditions to suggest that every bondholder is not absolutely entitled to receive the face value of the bond and sue therefor, if necessary, upon its maturity, April 1st, 1920. This also applies to the interest coupon; and the language by which the bondholder is given the right to exchange or demand payment upon the subsequent execution of a mortgage is expressly given to each individual holder. It will

hardly be suggested that optional rights conferred upon the bondholders "as they respectively elect" contemplates that such right and such election can be exercised only with the concurrence of at least one-third of the outstanding bonds. The words "they respectively" confer the rights upon each individual of the class.

It is significant that in the parts of the conditions of the bond conferring these rights there is no reference to the Knickerbocker Trust Company as trustee and no duties as trustee are prescribed; the latter arising solely under the sixth condition, which provides that in case of default in interest or under the sinking fund provision the bondholders, one-third concurring, may elect to declare the entire principal as due. This election is to be declared by the trust company "acting as the agent or trustee of the holders of the bonds," and is to be declared upon the request in writing of the owners of one-third in amount of the bonds. In case of "any such default" the trust company shall proceed in the manner requested by the holders of one-third in amount, the trust company acting as the agent or trustee appointed as above provided, of all outstanding bonds. Then follows in sequence the provision in question that no bondholder shall have the right to take any action in enforcement of the bonds independently of the trust company, unless joining with one-third of the bondholders, a request has been made to the trust company to act and the request has been denied.

This paragraph concludes "that in case of default *as above mentioned* payment thereof shall be enforced through the trust company as agent or trustee under an express trust."

This language shows that the restriction upon individual action certainly was conceived with special reference to the subject-matter of the paragraph, namely, a premature maturity of the bond declared for default in interest and sinking fund.

The function of the trust company is said to be that of the "trustee of an express trust," but the only part of the bond or of the conditions, which can be construed as defining an express trust are the provisions of this paragraph, giving the

trust company the power to declare the entire issue matured upon default in interest or sinking fund, at the request of one-third of the holders: Such maturity does not occur *ipso facto* upon default. It must be declared.

Furthermore it will be observed that the bonds are to be thus matured by declaration of the trust company and then only upon the concurrence of one-third of the holders. The following provision is that no bondholder shall have the right to individual action independent of the trust company unless he shall have first joined with holders of one-third of the bonds in a request to the trust company and the request has been denied.

Plainly it was intended to provide that the extraordinary remedy which should be invoked by the trustee, at the request of one-third, was not to be frustrated by the refusal of the trustee to act upon such request, but that upon such refusal one-third of the bondholders might bring individual action therefor.

As already pointed out, upon the due date of the bond there is no restriction upon the individual holder's right to collect nor is any trust imposed upon the trustee with respect to the collection of the bond, nor is there any with respect to the collection of the interest coupons.

It is also to be observed that in the event that a mortgage is executed and the individual bondholder elects to exchange or to have his bond paid and the company refuses, no trust or duty is imposed upon the trust company with respect thereto. These rights he must seek in his own name. It would be idle, therefore, to construe the language of paragraph 6, restricting individual action, so as to make it applicable to every right given to the bondholder. To do so would make it necessary for the bondholder, before enforcing an undoubted right, to apply to the trustee to take action which the instrument itself does not give the trustee power or authority to take. Furthermore, when the trustee does act it must act for all of the bondholders, and it would be idle to require the trustee, in case of a subsequent mortgage, to demand for one bondholder an exchange of securities and for another bond-

holder the money value of his bond. Such diverse rights do not need to be asserted in concert, nor is there any utility in doing so.

The purpose of this bond was to restrict individual action only in declaring a forfeiture for non-payment of interest and sinking fund charges. The enforcement of such forfeiture before the lapse of time which was originally agreed to by all for the corporate scheme may well have been considered a matter of policy and not to be lightly invoked without the concurrence of a considerable part of those in interest. But there is no necessary purpose indicated to hamper the bondholder in those absolute rights which are given to him individually, such as the right to collect principal and interest of his bond as due and the right to exchange or declare the bond due and receive payment therefor upon the execution of the mortgage.

The trial court is advised that the first question certified is answered in the negative, and the second question in the affirmative.