J. C. MUREN, Respondent, v. SOUTHERN COAL & MINING COMPANY, Appellant.

St. Louis Court of Appeals, November 4, 1913.

1. **MORTGAGES AND DEEDS OF TRUST:** Rights of Individual Bondholders: Validity of Restrictions. The holder of several bonds of a series, who has actual and constructive notice of a provision in the mortgage securing the bonds, prohibiting the institution of a suit on any of the bonds or coupons, or for a foreclosure of the mortgage, without first giving notice to the trustee of the default, nor unless the holders of a majority in amount of the bonds outstanding shall have made a request in writing to the trustee, and have afforded him a reasonable opportunity, to exercise the powers granted him by the mortgage, is brought into contractual relations with his cobondholders, so that his rights in respect to the foreclosure of the mortgage or institution of suit for the collection of his bonds is limited by such provisions.

2. ——: ——: ——. It is the policy of the law to sustain the validity of reasonable provisions inserted in a mortgage securing an issue of bonds designed to pass into the hands of individual bondholders, for the better security of all; and hence a stipulation contained in a mortgage securing an issue of

bonds, which is aptly referred to in the bonds, providing that the mortgage shall not be foreclosed, nor suit instituted thereon or on the bonds or coupons, by an individual holder, without the consent of other bondholders, is sustained as a reasonable limitation imposed by the mutual consent of the bondholders.

3. ———: ———: ———. The fact that a mortgage or deed 'of trust is given to secure the payment ratably of bonds or other obligations issued to or held by numerous creditors does not, in the absence of an express stipulation or statute to that effect, preclude an action at law against the mortgagor upon the bonds or other obligations thus secured, for the right to enforce such obligations at law is of too high a character to be taken away by implication.

4. ———: ———: ———. A mortgage, given to secure a series of bonds, provided that in case of default, the trustee should have the right, on request of the holders of a majority of the bonds, to foreclose the mortgage, and that the proceedings of the trustee should be subject to the direction and control of such holders, but that no holder should have the right to institute any suit, action, or proceeding at law or in equity upon any of the bonds or coupons, or foreclosure of the mortgage, or any other remedy upon the bonds or coupons, without first giving notice to the trustee of the default, nor unless the holders of a majority in amount of the bonds outstanding shall have made a request in writing to the trustee, and have afforded him a reasonable opportunity, to exercise the powers granted by the mortgage and to institute such action, suit or proceeding in his name, nor unless the trustee shall, for thirty days after such request, have failed to do so. *Held*, that this provision was applicable to actions at law on the bonds, and ·hence an individual holder, whose bonds aptly referred to it and who had actual and constructive notice of it, could not, upon default occurring, maintain an action at law on his bonds against the mortgagor, without showing that the conditions precedent prescribed by said provision obtained.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

REVERSED.

*Kramer, Kramer & Campbell, A.* and *J. F. Lee* and *McPheeters & Wood* for appellant.

(1) It is entirely competent for the bondholders to agree among themselves upon what conditions any

individual bondholder may exercise his right of action, and a provision in a mortgage that no proceeding at law or in equity shall be taken by any bondholder until after the refusal of the trustee to comply with the demand of a certain percentage of the bonds for the trustee to bring action upon the bonds or mortgage is reasonable and valid. Such provisions do not divest bondholders of any common law rights, nor attempt to oust the courts of their jurisdiction, but are merely certain conditions imposed by all the bondholders upon each bondholder in respect to the exercise of that right. Seibert v. Railroad, 53 N. W. 1134; Belleville Savings Bank v. Southern Coal & Mining Co., 173 Ill. App. 250; Boley v. Railroad, 64 Ill. App. 305; Jones-Corporate Bonds, page 376. (2) Such provisions are binding on any bondholder who takes his bond with either actual or constructive notice of the provisions of the mortgage. Seibert v. Railroad, 53 N. W. 1134; Belleville Savings Bank v. Southern Coal & Mining Co., 173 Ill. App. 250; Boley v. Railroad, 64 Ill. App. 305; Jones-Corporate Bonds, page 376; Guilford v. Railroad, 48 Minn. 560, 10 Cyc., 1175 Sec. C., 10 Cyc., 1180. (3) The contract here involved is an Illinois contract and will be interpreted in the light of the decisions of Illinois. 27 Cyc. 1133; Bishop on Contracts, Sec. 1395.

*Jamison & Thomas* for respondent.

(1) Limitations imposed by a mortgage securing a bond issue, upon the right of a holder of such bonds or coupons to enforce payment thereof, can refer only to the right and remedies granted by the mortgage and the security afforded thereby and cannot deprive him of his right to proceed in a simple action at law when such proceeding is independent of the mortgage. Guilford v. Railroad, 48 Minn. 560; Haskins v. Railroad, 74 App. Div. (N. Y.) 31; Commonwealth v. Railroad, 122 Pa. St. 306; Western Penn. Hospital v. Mercantile

Library Hall Co. et al., 189 Pa. St. 269; Railroad v. Johnson, 54 Pa. St. 127; Manning v. Railroad, 29 Fed. Rep. 838; Kimber v. Gunnell, Etc., Co., 126 Fed. Rep. 137. (2) Statute of limitations begins to run from the time a coupon falls due, and, therefore, if a coupon holder's right to sue is defeated or postponed until after the statute has run he is forever barred. Amy v. Dubuque, 98 U. S. 470; Clark v. Iowa City, 20 Wall. (U. S.) 583; Hughey v. Mann Co., 35 Fed. Rep. 481; Kishkonny v. Benton, 104 U. S. 668.

NORTONI, J.—This is a suit at law for the recovery of a judgment on twenty coupons representing accrued interest on certain mortgage bonds of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is an incorporated coal company and on October 2, 1905 it issued bonds to the amount of one million, one hundred thousand dollars, all of which are secured by a mortgage upon its property situate in the State of Illinois. The Mercantile Trust Company of the city of St. Louis is the trustee in the mortgage. At the time the bonds and mortgage were executed, plaintiff was vice president of the defendant company and as such familiar with the entire transaction. It appears that plaintiff is owner of sixteen of the bonds referred to. The interest coupons attached thereto are in form as follows:

No. ....                                          $25

On the .... day of ...., .... the Southern Coal and Mining Company will pay to bearer at the office of the Mercantile Trust Company in the city of St. Louis, Missouri, twenty-five dollars in gold coin of the United States, being .... months' interest then due on its first mortgage five per cent gold bond numbered ....

JAMES Y. LOCKWOOD,
Treasurer.

As before said, this is a simple suit at law on twenty separate interest coupons of twenty-five dollars each. There is no controversy with respect to the validity of the coupons but it is asserted on the part of defendant that plaintiff is not entitled to maintain the suit, for the reason the mortgage securing the payment of the bonds and coupons annexed thereto stipulates, in substance, that no suit may be instituted by any of the bond or coupon holders until notice has first been given to the trustee of the default and it is requested to institute the suit and a majority in amount of the bondholders have requested such action and then thirty days have elapsed thereafter without action instituted on the part of the trustee.

There can be no doubt that plaintiff was fully aware at the time he received the sixteen bonds held by him, together with the coupons attached thereto, of the provisions of the mortgage, for it appears that he was present at a meeting of the board of directors of the company in his capacity as vice president thereof when the mortgage and bonds were read and executed. Moreover the bonds on their face reveal that each is one of a series of eleven hundred bonds issued by defendant, numbered from one to eleven hundred, for the sum of $1000 each, and that all of said bonds are of like tenor and effect and "all are equally secured by and subject to the terms and conditions of a mortgage dated October 1, 1905," duly executed by defendant to the Mercantile Trust Company as trustee" and which constitutes a first lien upon the property of defendant coal company therein described. Each of the bonds further refers to the mortgage for the terms and conditions upon which the bonds are issued and secured, etc. It appears, too, that the mortgage was duly recorded in the proper records in the counties where the mortgaged property is situate.

Among other things, the mortgage provides substantially that it is executed for the benefit and se-

curity of the holders of such bonds "without prefer-
ence, priority or distinction as to lien or otherwise, so
that all of said bonds so issued shall have the same
right of lien, privilege and security thereunder." Ap-
pearing, as it does, that plaintiff was fully advised,
both through actual and constructive notice, of the
terms of the mortgage securing the payment of the
bonds and coupons attached thereto at the time he ac-
cepted the bonds, it is certain that his rights in the
premises are subject to all of the valid provisions of
the mortgage. Being thus advised that the several
bonds held by him are each one of a series of bonds
secured by the same mortgage to a trustee upon the
property of defendant for the benefit of all, plaintiff
must be regarded as having agreed to be brought into
contract relations with his cobondholders and that
his absolute right in respect of the foreclosure of the
mortgage or the collection thereby of the principal or
interest of his bond is limited by the relevant pro-
visions of the trust deed and the peculiar nature of the
security. [See Jones on Corporate Bonds (3 Ed.),
Sec. 340a; Guilford v. Minneapolis, etc. R. Co. 48 Minn.
560, 571.]

It is the policy of the law to sustain the validity of
such reasonable provisions inserted in a mortgage
deed securing an issue of bonds which are designed to
pass into the hands of separate individual holders for
the better security of all, as such security should not be
impaired by the conduct of one or a few. In this view,
stipulations contained in such mortgages, which are
aptly referred to in the bonds themselves, providing
that the mortgage shall not be foreclosed or suit insti-
tuted thereon or on the bonds or coupons, by an in-
dividual holder with a view of converting the property
pledged to the payment of a portion of the obligations
outstanding without the consent of others, are sus-
tained as reasonable limitations imposed by the bond-
holders through mutual agreement upon the rights of

each other. In other words, such stipulations contained in the mortgage are not viewed as tending to oust the courts of jurisdiction in the premises, but rather as wholesome restrictions imposed for the better security of all concerned. Therefore, when such provisions are inserted in the mortgage and the provisions of the mortgage aptly referred to in the bonds, as here, in plain and unambiguous terms, the courts universally give them effect as a proper means of protecting the security for the benefit of the entire series of bonds. [See Guilford v. Minneapolis etc. R. Co., 48 Minn. 560; Boley v. Lake St. etc. R. Co., 64 Ill. 305; Seibert v. Minneapolis, etc. R. Co., 52 Minn. 148, 53 N. W. 1134; Jones on Corporate Bonds (3 Ed.), Sec. 340a; Belleville Savings Bk. v. So. Coal, etc. Co., 173 Ill. App. 250.]

But though such be true, a mortgage or trust deed of all the property of the mortgagor to secure the payment ratably of bonds or obligations issued to or held by numerous creditors does not, in the absence of an express stipulation therein or of a statute to that effect, constitute any defense to an action at law against the mortgagor by each of the creditors upon the bonds or promissory obligations thus secured. [See Kimber v. Gunnell Gold Mine etc. Co., 126 Fed. 137; Chicago, etc. R. Co., v. Fosdick, 106 U. S. 47.] Indeed, the common law right of suing to judgment a written obligation for the payment of money, and admitted to be valid, is of too high a character to be taken away by mere implications, and especially is this true if those implications are to be drawn from instruments other than that which is given in direct and positive acknowledgment of the debt. [See Manning v. Norfolk Southern R. Co., 29 Fed. 838.] In other words, the common law right to enforce such obligations in a suit at law remains intact, if not taken away by provisions in the contract to that effect. [See Jones on Corporate Bonds (3d Ed.), Sec. 340.]

This being true, the validity of the defense interposed must be determined by reference to the terms of the mortgage and an accurate interpretation of the limitations it prescribes on the rights of plaintiff bond and coupon holder. A portion of the eleventh clause of the mortgage is relied upon by defendant but we set it out in full.

"Eleventh. In case any default shall be made and shall continue as specified in paragraph tenth hereof, then and in any and every such case the trustee shall have the right, upon the request of the holders of a majority in amount of the bonds hereby secured and then outstanding, to proceed in any court of competent jurisdiction *to foreclose this mortgage* for the benefit of the holders of the bonds so secured and then outstanding and take such other legal steps as may be necessary *to secure to the holders* of said bonds then outstanding the full *benefit of the security* intended by this indenture; and upon the filing of a bill in equity or other appropriate proceeding to foreclose this mortgage in any court of competent jurisdiction, the court may appoint the trustee or some other suitable person receiver of the property and rights hereby mortgaged, and of the earnings, incomes, rents, revenues, issues and profits thereof, pending such proceeding, with such powers as the court making such appointment shall confer; and in case a bill is filed to foreclose this mortgage as hereinbefore provided, the trustee shall be allowed a reasonable solicitor's fee for filing and conducting said foreclosure proceeding in its behalf, by the decree entered in such foreclosure suit, and the same shall be taxed and paid as part of the costs in such proceeding. *The proceedings of the trustee in the institution and prosecution of such foreclosure suit, or other appropriate proceeding to foreclose this mortgage,* shall be at all times subject to the direction and control of the holders of a majority in amount of the bonds issued hereunder and then outstanding, their

wishes being expressed in writing to said trustee. No holder or holders of any bond or bonds or coupons secured hereby shall have the right to institute any suit, action or proceeding in equity or at law upon any of the bonds or coupons hereby secured, or for the foreclosure of this indenture, or the execution of the trusts hereof, or for the appointment of a receiver, or any other remedy upon the said bonds or coupons, or under this indenture, without first giving notice in writing to the trustee of the fact that said default has occurred and continued as hereinbefore provided; nor unless the holders of a majority in amount of the bonds hereby secured and then outstanding shall have made a request in writing to the trustee and have *afforded* the trustee a reasonable opportunity to exercise the powers herein granted, and to institute such action, suit or proceding in its name, nor unless the trustee shall for thirty days after such request in writing have failed so to do, and such notification and request are hereby declared to be conditions precedent to the execution (except by the trustee) of the powers and trusts of this indenture, or the appointment of a receiver, or any other remedy hereunder or upon such bonds or coupons.''

It appears, from the first part of the eleventh provision of the mortgage above copied, that the trustee is not authorized to institute and maintain suits thereunder such as this one—that is, mere suits at law, aside from and independent of the mortgage. The provision of the mortgage seems to contemplate that the trustee shall have authority to proceed under the mortgage, whereby the security is sought to be effectuated toward liquidating the debt. Be this as it may, it is the duty of the court to give effect to the intention of the parties, if such may be ascertained, without resort to mere implications and inferences. In other words if there be express provisions in the mortgage interdicting a suit at law on a coupon by the holder thereof, unless

notice be given to the trustee and a request made on him by a majority in amount of the bondholders, then such express language must control. We believe the latter portion of the eleventh provision, when fairly interpreted with a view of protecting the security vouchsafed in the mortgage from being assailed and probably sacrificed to the detriment of others, requires notice to the trustee and a request from a majority in amount of the bondholders to proceed as a condition precedent in every instance. The words of the mortgage touching this matter are as follows:

"No holder or holders of any bond or bonds or coupons secured hereby shall have the right to institute any suit, action or proceeding in equity or at law upon any of the bonds or coupons hereby secured, or for the foreclosure of this indenture or the execution of the trusts hereof or for the appointment of a receiver, or any other remedy upon the said bonds or coupons, or under this indenture, without first giving notice in writing to the trustee of the fact that said default has occurred and continued as · hereinbefore provided; nor unless the holders of a majority in amount of the bonds hereby secured and then outstanding shall have made a request in writing to the trustee and have afforded the trustee a reasonable opportunity to exercise the powers herein granted, and to institute such action, suit, or proceeding in its name, nor unless the trustee shall for thirty days after such request in writing have failed so to do, and such notification and request are hereby declared to be conditions precedent to the execution (except by the trustee) of the powers and trusts of this indenture, or the appointment of a receiver, or any other remedy hereunder or upon such bonds or coupons."

It is true that this provision seems to postpone the right of suit until after notice and request from a majority in amount of the bondholders is made on the

trustee and the trustee shall be "afforded" "a reasonable opportunity to exercise the powers herein granted, and to institute such suit or proceeding in its name" and until thirty days expired thereafter. The conjunctive "and" employed in this paragraph seems to confuse the matter and to suggest the thought that only such suits are interdicted, in the event of a failure to give notice and a request on the trustee, as the trustee is authorized to institute; but this does not accord with the other provisions of the instrument and the same paragraph thereof which seems to forbid any suit of any kind on the bonds or coupons until the trustee has been afforded an opportunity to proceed. Such is the view of the Court of Appeals of the State of Illinois expressed on the identical language in the identical mortgage in the case of Belleville Savings Bank v. So. Coal & Min. Co., 173 Ill. App. 250, and we regard it as a fair interpretation of the instrument.

While the precise matter in judgment is confused somewhat, as above pointed out, it seems that the intent of the parties gleaned from the whole instrument interdicts a suit in the instant case, for the reason that, though the trustee had been notified to proceed and had neglected to do so, no request whatever was made on it by a majority in amount of the bondholders, as the mortgage requires.

In this view, the judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.