# HENRY W. BARTOL

## *vs.*

# THE GOTTLIEB-BAUERNSCHMIDT-STRAUS BREW-ING COMPANY.

*Corporate bonds: coupons; default on——; when holders are debarred from suing; provisions of the mortgage contract.*

So long as the coupons of coupon bonds remain the property of the holder of the bonds, they are incidents of the bonds, although they be detached therefrom, and are held subject to the terms and conditions contained in the bonds and the mortgage by which the latter are secured.                    p. 34

A corporation mortgage securing an issue of bonds contained, among other provisions, the one that no holder or holders of any of the bonds or coupons, by the mortgage secured, should have the right in any manner to affect, disturb or prejudice the lien or security of the deed of trust by his or their action, except as therein provided; but that all proceedings, in law or in equity, shall be instituted, had and maintained for the equal benefit of all holders of said bonds and coupons outstanding: *Held,* that this provision debars a holder of an interest coupon, upon which the corporation has made default, from maintaining any action for the collection thereof.            pp. 40, 41

*Decided June 22nd, 1916.*

Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. C. Coleman* (with whom were *Semmes, Bowen* and *Semmes* on the brief), for the appellant.

*Joseph C. France* and *Albert E. Donaldson* (with whom were *Robert Crain* and *Omer F. Hershey* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for the appellee, defendant below, in a suit brought against it by the appellant, upon certain overdue interest coupons of the first mortgage bonds of the defendant company.

The facts upon which the case was tried by the Court without the aid of a jury, are undisputed.

It was admitted at the trial that the plaintiff was the owner of the bonds, as well as the coupons, and that at the time of the institution of the suit the coupons were overdue and unpaid, although they had been duly presented for payment in accordance with the provisions of the mortgage by which the bonds were secured.

There are one hundred and two of these coupons, seventy-eight of them are for twenty dollars each, and twenty-four for ten dollars each. The form of them, as inserted in the mortgage, is as follows:

"(Coupon)

"$. . . . .

"On the . . . . . . . day of . . . . . . ., A. D. 19. ., The Gottlieb-Bauernschmidt-Straus Brewing Company will pay to bearer, at the office of The Mercantile Trust and Deposit Company of Baltimore, Baltimore, Maryland, . . . . . . Dollars in United States Gold Coin, of or equal to, the present standard of weight and fineness, being six months' interest on its First Mortgage Gold Bond No. . . . . . . for $1,000.

". . . . . . . . . . . . . . . . . . . . . . .

"Treasurer."

The coupons refer and have relation to the bonds and the bonds to the mortgage, which is of record among the Land Records of Baltimore City, and so long at least, as the coupons remain the property of the holder of the bonds they are incidents of the bonds, though detached therefrom, and are held subject to the terms and provisions contained in the bonds and mortgage. In *Bailey* v. *County of Buchanan,* 115 N. Y. 297, 6 L. R. A. 562; *Williamsburgh Savings Bank* v. *Town of Solon,* 136 N. Y. 481.

This suit is brought by the holder of the bonds from which the coupons were detached, and we need not consider the negotiable character of the coupons or the rights of *bona fide* purchasers without notice of the provisions of the mortgage.

The question involved in this appeal is the right of the plaintiff to maintain this action. To determine this question we must resort to the mortgage to ascertain whether by its provisions the plaintiff is deprived of the remedy pursued by him, for his right to pursue such remedy is otherwise conceded. *Fleming* v. *Fairmont & M. R. Co.,* 49 L. R. A. (N. S.) 155, and cases found in note thereto.

The defendant corporation by its mortgage, executed to secure the payment of said bonds and coupons, granted unto the trustee, The Mercantile Trust and Deposit Company of Baltimore, and its successors, all of the property real, personal and mixed that was at such time held and owned by it,

including the good will of its business, its income and profit, its books of accounts, all its franchises capable of conveyance, and "all other real and leasehold and other personal or mixed property which may hereafter be obtained or acquired by said Brewing Company"; and in order to render effectual the conveyance of "after-to-be-acquired property" the company covenanted with the trustee and its successors and assigns, that immediately after the acquisition of any such property, whether it be appurtenant to or connected with the business of the company, it would, by deed or other proper conveyances or transfers, convey the same to the trustee, or its successors, to be held upon the trusts and for the uses of the mortgage or deed of trust.

The mortgage also provided that the defendant company should be permitted to remain in possession of the property so granted and to manage and operate the business of the corporation, until default in the mortgage.

In the default clause of the mortgage is found the following provision:

"In case of any default in the payment of interest on any of said First Mortgage Gold Bonds, when such interest shall become due and payable, or in case of any default in the observance or performance of any other matter or thing to be done or performed by the Brewing Company, according to the covenants, conditions and requirements of the said Bonds and of these presents, then in its or their discretion the Trustee or its successors, shall be authorized to apply to any Court of competent jurisdiction for the appointment of a receiver of all the said mortgaged property and of all the rents, income, profits, issues, and revenues thereof from whatever source derived; and thereupon, it is hereby expressly covenanted and agreed that such Court shall forthwith appoint a receiver or receivers of such mortgaged property and of such rents, income, property, profits, issues and revenues with the usual powers and duties of a receiver in like case; and that if such receiver or receivers be nominated or des-

ignated by the Trustee, such appointment shall be
made by the said Court as a matter of strict right to
the Trustee and to the said First Mortgage Gold Bond-
holders represented by it, and without reference to the
adequacy or inadequacy or the value of the premises
and property hereby mortgaged to secure fully the pay-
ment of said bonds or to the solvency or insolvency
of the Brewing Company, and such rents, income, prof-
its, issues and revenues shall be applied by such re-
ceiver or receivers according to law and the order
and practice of such Court.  And it is hereby ex-
pressly declared and agreed that no holder or holders
of a bond, or of any bonds or coupons secured hereby,
shall have the legal right to institute any suit, action
or proceeding in equity or in law for the enforce-
ment of any rights or the execution of any trust here-
under or for the appointment of a receiver without
first giving thirty days' notice in writing to the Trus-
tee, its successor or successors, of the fact that de-
fault has occurred and continued as aforesaid, nor
unless the holders of twenty per cent. of the said
bonds then outstanding have made request in writing
to the Trustee, as above provided, and have afforded it
a reasonable opportunity to proceed to execute the
powers hereinbefore granted, or to institute such ac-
tion, suit or proceeding in its own name, and have
also offered to it adequate security and indemnity
against the costs, expenses and liabilities to be incurred
therein and thereby, and such notification, request and
offer of indemnity are hereby declared to be condi-
tions precedent to any action, or cause of action, for
the enforcement of any rights hereunder, or for the
application for the appointment of a receiver; it be-
ing understood and intended that no one or more hold-
ers of bonds or coupons hereby secured *shall have the
right in any manner whatever to affect, disturb or
prejudice the lien or security of this Deed of Trust by
his or their action,* except in the manner herein pro-

vided, but that all proceedings in law or equity shall
be instituted, had and maintained for the equal benefit
of all holders of said bonds and coupons outstanding."

It is also provided in the mortgage, "that it shall and may
be lawful for the Brewing Company, its successors or as-
signs, by and with the consent and approval of the trustee,
or its successor or successors in the trust by this instrument
created at any time or times hereafter, to exchange for other
property, or sell or lease for any terms, renewable or other-
wise, any part or parts of the hereby mortgaged property."

The mortgage also contains the provision that, "if the
defendant company suffered or allowed any lien to be ob-
tained on its property, the trustee is authorized to enter and
take possession of its property, etc."

The record discloses that the defendant company met all
payments of interest on its bonds to and including the inter-
est due on September 1, 1913, and to such time met the re-
quirement of the sinking fund provision of the mortgage; and
that on February 12, 1914, a funding agreement was made
by such of the holders of the mortgage bonds who signed the
same (not including the plaintiff, but constituting more than
eighty per cent. of the entire number of the bondholders),
the defendant company and the Mercantile Trust and De-
posit Company. By agreement of counsel, this funding
agreement is not printed in full in the record, but the sub-
stance of it as therein stated is that "each signing bond-
holder agreed to deposit, as they mature, his interest coupons
from said bonds, from March 1, 1914, to September 1, 1919,
both inclusive, receiving in exchange therefor coupon fund-
ing bond or bonds of the company; the defendant company
agreeing to pay on March 1, 1934, to each signing bond-
holder the face value of his first mortgage interest coupon
delivered to the Trust Company, with interest at 6%."

The record further discloses that the mortgaged property
and assets are still in the possession of the defendant com-
pany, and that it is still carrying on the brewing business in

its ordinary and usual way. It is also shown by the record that the company in the year ending February 28, 1914, but not in the succeeding year, earned "its coupon interest" and that it also earned such interest in the nine months of the fiscal year ending February 28, 1916; and that it had complied with the sinking fund provision of the mortgage, that is, as the witness expressed it, "not strictly in accordance with the terms of the mortgage, but the payments have all been made. They have been in arrears, but all up now."

The Courts in other jurisdictions have been called upon to weigh and consider provisions found in mortgages executed to secure the payment of bonds, and the interest thereon and to determine whether such provisions excluded the coupon holders from maintaining a suit of this character.

In these cases the provisions found in the different mortgages necessarily differ, and in some very widely, and as the decision in each case was based upon the provisions of the mortgage in such case, the decisions naturally differed, and therefore they are not as precedents very helpful in determining the question before us.

In some cases it has been held that the provisions contained in the mortgage did not deprive the plaintiff of his right to sue upon the coupons. In *Haskins* v. *Albany & Hudson R. & P. Co.,* 74 App. Div. 31; *Fleming* v. *Fairmont & M. R. Co.,* 49 L. R. A. (N. S.) 155, *supra,* and the cases therein cited.

In other cases the Courts held that by the provisions contained in the mortgage the plaintiff was deprived of his right to sue upon the coupons. *Bellville Savings Bank* v. *Southern C. & M. Co.,* 173 Ill. App. 250; *Muren* v. *Southern C. & M. Co.,* 173 Ill. App. 250; *Muren* v. *Southern C. & M. Co.,* 160 S. W. 835; *Rogers & Co.* v. *British & Colonial Colliery Supply Asso.,* 68 L. J. (Q. B.) 14, and others.

The settled rule of law that should govern in determining the effect of the provisions of the mortgae upon the plaintiff's common law right to sue upon the coupons, is that before he can be deprived of such right it must appear, either in ex-

pressed terms or by implication, reasonably free of doubt, that he was not by the provisions of the mortgage to exercise such right. *Fleming* v. *Fairmont & M. R. Co., supra; Manning* v. *Norfolk & Southern R. Co.* (C. C.), 29 Fed. 838; *Nute* v. *Hamilton Mut. Ins. Co.,* 6 Gray, 174, 181; *Kimber* v. *Gunnell Gold Min. & Mill. Co.,* 61 C. C. A. 203, 126 Fed. 137.

Applying this rule to the present case we are of the opinion that by the provisions of the mortgage the plaintiff is deprived of the remedy here pursued to recover upon the coupons. The restrictive provisions of the mortgage must be considered in connection with and in the light of other provisions found therein from which may be gathered the general object and purpose which prompted its execution.

The object of the mortgage was to secure the bonds and it is disclosed by its provisions that every thing was done that could be done to give effect to this purpose. In the first place the company granted all of its property of every kind and description, not only what it then had, but what it might thereafter acquire, and to accomplish this it covenanted to convey the same when so acquired to the trustee named in the mortgage for the uses of the mortgage. It was not to suffer or allow any liens to be obtained upon its property, and upon its failure to comply with this, as well as other provisions of the mortgage, several courses of action were open to the trustee, upon the suggestion and approval of the requisite number of bondholders, for the protection of all the bondholders without "preference, priority or distinction." It was clearly the purpose of the mortgage that individual bondholders should not be permitted, in attempting to advance their own interests to injure other bondholders by impairing the security of the lien of the mortgage.

To permit the appellant to recover judgment on his overdue coupons in this case would necessarily "effect, disturb or prejudice the lien or security of the deed of trust."

The judgment would at once become a lien upon the real estate then owned by the company, which could not be ad-

vantageously sold or exchanged without making a prefer-
ential payment to the appellant for a release of the judgment.
This would be in contravention of both the spirit and letter
of the provisions of the mortgage. "And so, conversely, the
appellant's judgment would intercept and cloud the title to
any real estate (afterwards) conveyed to the company, not-
withstanding the provision of the mortgage which requires
it to convey all after-acquired real estate to the trustee for
the equal benefit of all the bondholders."

The suit and entry of judgment would also have a general
injurious effect upon the value of the property of the cor-
poration and upon its successful management and operation,
and in consequence of which the security of the lien of the
mortgage would be impaired.

It was to prevent this and other actions or proceedings on
the part of individual bondholders that the mortgage pro-
vided that no one or more holders of bonds or coupons shall
have the right in any manner whatever to effect, disturb or
prejudice the lien or security of the deed of trust by his or
her action, except in the manner herein provided and that all
proceedings in law or equity shall be instituted, had and main-
tained for the equal benefit of all holders of bonds and cou-
pons outstanding.

It is contended by the appellant that the provision of the
mortgage just quoted does not apply to an action such as is
here instituted, but applies only where the holder of the bond
or coupon undertakes to enforce some one of the remedies
provided for in the mortgage.

There is, we think, no warrant or justification in the
language used for such exception when we consider the ob-
ject and purpose of the provision. It was to avoid injury or
impairment to the security of the lien caused by any action
or proceeding instituted by an individual bond or coupon
holder that suggested the insertion of this provision in the
mortgage. It was not the character of the action or proceed-
ing about which the parties interested were concerned. It
was the injurious effect upon the security of the lien of the

mortgage resulting from the institution of *any* action on the part of individual bondholders, that suggested the insertion of these provisions in the mortgage.

The action of the Court in granting the defendant's prayers and rejecting the plaintiff's prayers is consistent with the views that we have expressed and there are no errors in the rulings of the Court on the testimony. In view of what we have already said as to the law of this case, it becomes unnecessary to discuss these exceptions.

We will state however that the effect of the judgment rendered by the Court below is only to bar a recovery in this suit, or one commenced under similar conditions, but that it would not prevent the collection of the coupons involved, by suit or otherwise, under circumstances in harmony with those contemplated and provided for by the mortgage. *Bellville Savings Bank* v. *Southern C. & M. Co., supra.*

As we find no errors in the ruling of the Court below the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*