[No. 24044.    Department Two.    August 24, 1933.]

C. S. Moody, *as Supervisor of Banking, Appellant,* v. Pacific Steamship Company, *Respondent.*[1]

*Bausman, Oldham, Cohen & Jarvis* and *Perry R. Gershon,* for appellant.

*Bogle, Bogle & Gates* and *Edward G. Dobrin,* for respondent.

[1]Reported in 24 P. (2d) 609.

Steinert, J.—This is an appeal from an order granting a motion to discharge a writ of garnishment.

In January, 1925, respondent issued its series of 6½% gold bonds in the aggregate principal sum of five million dollars, with interest coupons attached. To secure the bonds, a mortgage, or deed of trust, covering a fleet of vessels and their equipment, was executed by respondent. Five of the bonds, aggregating in principal amount five thousand dollars, were purchased by Pacific Commercial Bank of Seattle, and became due and payable January 1, 1931.

On October 23, 1931, after the bonds became due, the bank passed into the control of the state supervisor of banking, who commenced this action at law in February, 1932, to recover upon the bonds and upon the interest coupons maturing January 1, 1931. Upon the filing of the complaint, a writ of garnishment was issued, directed to a debtor of the respondent company. The garnishee answered that it was indebted to the respondent in the sum of $5,250. Respondent then appeared and moved to discharge the garnishment, on the ground that the appellant was, by the terms of the mortgage, without right to institute an action at law on the bonds. The motion was granted and the garnishment was discharged. From the order thus made, this appeal was taken.

It is the position of the appellant that neither the bonds nor the mortgage contain any provision depriving a bondholder of the right to waive the security of the mortgage and maintain a common-law action upon the promise to pay contained in the bond. It may be conceded that, if there be no such restrictive provision, an action at law may be maintained. 6 Fletcher, Cyc. Corporations (Permanent Ed.), § 2751; 14-A C. J., pp. 640, 641, § 2612.

In view of appellant's contention, it becomes necessary to examine those provisions of the bonds and of the mortgage which bear upon the question here involved. The bonds contain, among others, the following provisions, with immaterial portions deleted:

"Pacific Steamship Company . . . for value received, acknowledges itself indebted, and hereby *promises to pay* on January 1st, 19........., to bearer or . . . to the registered holder thereof, at the office of the Anglo-California Trust Company . . . or . . . The Chase National Bank . . . *the sum of One Thousand Dollars* . . .; *and to pay interest thereon* . . . upon presentation and surrender of the respective interest coupons . . . as the same . . . become due . . .

"*All of said bonds are without preference, priority or distinction of one over another, and are issued, or to be issued, under the provisions of, and the payment of each and all of them is equally secured by a First Preferred Mortgage, dated as of January 1st, 1925,* . . . *reference to which Mortgage is hereby made* for the description of the property to be mortgaged, the nature and extent of the security, *and the rights therein of the holders of the bonds issued thereunder* . . .

"In case of certain defaults specified in said Mortgage, the principal and accrued interest of this bond and of all other bonds of this issue may be declared, or may become due and payable before the fixed maturity thereof, in the manner and with the effect provided in said Mortgage.

"This bond may be redeemed by the Company . . . upon the terms, conditions and restrictions and upon the notice prescribed in said Mortgage.

"*The holder of this bond shall have no right of action thereon or under said Mortgage, except as provided in that instrument.*" (All italics ours.)

The mortgage covers fifty-three typewritten pages, according to the record, and is divided into seventeen articles, each of which, with one or two exceptions, is

subdivided into sections. The instrument is too voluminous to quote verbatim. We limit ourselves, by quotation and reference, to what we consider its material portions. After a lengthy preamble and preliminary recitals, the mortgage provides:

"Now, THEREFORE, in order to secure the payment of all of said bonds at any time issued and outstanding under this Mortgage (whether those now issued as Series 'A,' or *those hereafter to be issued* as hereinafter provided) . . . and to secure the performance and observance of each and every of the covenants and conditions therein and herein contained, *and to declare the terms and conditions upon which said bonds . . . are issued, received and held,* . . . and for and in consideration of the premises and of the acceptance of said bonds by the present and subsequent holders thereof, . . . the Company has executed and delivered this Mortgage [here follows description of property mortgaged] . . . and it is hereby expressly covenanted by and between the parties hereto that *all of said bonds are to be issued, received and held* and that the mortgaged property is to be held by the Trustees upon and subject to the trusts, terms, uses, covenants and conditions herein stated." (All italics ours.)

Then follow the seventeen articles and their subdivisions.

Article II, § 3, provides that the bonds issued thereunder and secured thereby shall be negotiable. Subsequent articles deal with the form, authentication and issuance of the bonds, the replacement of security by substitution, the covenants to be performed by the company, the prepayment and redemption of the bonds, the remedies upon default, the rights of bondholders, the powers and duties of the trustees and sundry other and minute provisions.

Article VIII, § 3, provides that, in the event of default as specified, the trustees shall, upon the written

request of the holders of twenty-five per cent, in amount, of outstanding bonds, take such action for the protection of the bondholders as the trustees, being advised by counsel, shall deem most advisable and expedient in the interest of the bondholders, and likewise, upon such request, to institute and prosecute appropriate judicial proceedings for the protection of the rights of the bondholders. Section 4 (4) provides that the holders of the majority, in principal amount, of the bonds shall have the right to direct and control all such proceedings, and may compel the trustees to disregard the notice and demand for action theretofore made by the holders of twenty-five per cent, in amount, of such bonds. Sections 6 and 7 of article VIII, which both counsel have quoted in their briefs, we likewise quote:

"Section 6. No holder of any bond or coupon shall have any right to institute any suit, action or proceeding in equity or at law for the foreclosure of this Mortgage, or for the execution of any trust hereunder, or for the appointment of a receiver, or for any other remedy hereunder unless such holder previously shall have given to the Trustees written notice that some event of default specified in such notice has happened, nor unless also the holders of twenty-five per cent. (25%) in amount of the bonds then outstanding shall have made written request upon the Trustees, and shall have afforded to the Trustees a reasonable opportunity either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in their own names; nor unless they shall have offered to the Trustees adequate security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustees, to be conditions precedent to the execution of the powers and trusts of this Mortgage and to any action or cause of action for foreclosure or for the appointment of a

receiver or for any other remedy hereunder, it being understood and intended that no one or more holders of bonds or coupons shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the lien of this mortgage, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of such outstanding bonds and coupons.

"Section 7. Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the Trustees or to the holders of bonds is intended to be exclusive of any other remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, or in equity or by statute."

Subsequent sections provide that, in case of default for a specified period, the trustees shall, upon the commencement of proper action, be entitled to the appointment of a receiver of the property and of the income, rents, issues and profits thereof; also, that if, in the exercise of the remedies provided for, the full amount of the bonds and interest are not paid, the trustees shall have judgment against the company for the deficiency.

Article XI empowers the holders of three-fourths, in principal amount, of all the bonds outstanding, with the assent of the trustees, from time to time,

". . . to assent to and authorize any modification or compromise of the rights of the bondholders and of the Trustees against the Company or against any property subject to this Mortgage; whether such rights shall arise under this mortgage or otherwise; . . ."

None of the conditions precedent, stipulated in article VIII, § 6, above quoted, have been met or complied with by the appellant.

Reverting now to the bonds themselves, our attention is at once arrested by the provision that "the holder of this bond shall have no right of action thereon or under said mortgage except as provided in that instrument." This language is so clear and unambiguous that its meaning can not be doubted. It says that *no* action may be maintained either upon the bond or upon the mortgage except as provided in the mortgage. This is an unequivocal restriction in the bonds themselves, and is a direct reference to the mortgage for ascertainment of the rights of the bondholders, and of the trustees as well. An inspection of the mortgage discloses that nowhere therein is the restriction which is contained in the bonds waived, modified or nullified. Rather is it reinforced by specific provisions as to when, how, and under what conditions, a right of action shall come into existence and be prosecuted. Proper reference being made by the bonds to the mortgage, the two instruments must be taken and considered together as forming the contract.

The mortgage explicitly recites that it is executed and delivered not only to secure the payment of the bonds and the performance of the covenants therein contained, but also to declare the terms and conditions upon which said bonds are issued, received and held, subject to the trusts, uses, covenants and conditions stated in the mortgage. Article VIII, with its fourteen subdivisions, makes full and adequate provision for procedure upon default, and § 6 thereof, which we have already quoted, limits and restricts the bondholders to such proceedings at law or in equity as are provided in the mortgage, to the end that all holders of outstanding bonds shall be equally benefited.

Such provisions in a mortgage are not to be viewed as tending to oust the jurisdiction of the court, but rather to afford a benefit and protection to all the

bondholders and to avoid any injury to, or impairment of, the security of their lien by an advantage sought to be taken by an individual bondholder in an independent action. 7 Fletcher, Cyc. Corporations (Permanent Ed.), § 3157-8; *Allan v. Moline Plow Co.*, 14 Fed. (2d) 912; *Crosthwaite v. Moline Plow Co.*, 298 Fed. 466; *Home Mortgage Co. v. Ramsey*, 49 Fed. (2d) 738; *Muren v. Southern Coal & Mining Co.*, 177 Mo. App. 600, 160 S. W. 835; *Bartol v. Gottleib-Bauernschmidt-Straus Brewing Co.*, 129 Md. 32, 98 Atl. 286; *Barker v. Utah-Idaho Cent. R. Co.*, 57 Utah 494, 195 Pac. 635.

Although the fund reached by the garnishment proceeding in this action was not immediately covered by the mortgage, yet, if the garnishment were sustained by a consequent judgment, it would very probably have a most serious effect upon the remaining bondholders, and would have a tendency to precipitate other independent actions, or else a joint action, which would "affect, disturb or prejudice the lien of this Mortgage," and which might otherwise be considered altogether inadvisable. If the earnings or funds of the company could be sequestered through garnishment as rapidly as they were accumulated and deposited in a bank, it would not only hamper the company in the successful management and operation of its business, but would also, in all probability, precipitate a mad race for priority and advantage among the bondholders. A few would profit to the detriment of the rest.

Anxiety and apprehension would be reflected in a demand for precipitate action by the trustee. One-fourth of the bondholders so concerned might attempt to compel the trustees to begin foreclosure at a time when it was inexpedient to do so. The majority holders might, of course, repudiate the acts of the belligerent minority, but, in turn, would be defenseless against

actions by individual bondholders. The result would almost certainly affect and impair the security of the mortgage and ultimately destroy the value of any deficiency judgment that might be obtained upon foreclosure of the mortgage by the trustee.

The mortgage, by its terms, contemplates the issuing of an additional series of bonds, to the aggregate amount of ten million dollars. If an action such as this may be instituted by any individual bondholder, the marketability of subsequent bonds would be doubtful. A restriction having been placed upon the individual's right of action, the bondholders as a whole have a right to assume that it will be enforced.

Appellant relies upon the case of *Bank of California v. National City Co.*, 138 Wash. 517, 244 Pac. 690. In that case, the bonds contained a reference to the mortgage in language somewhat similar to a portion of the language contained in the bonds involved in this action. That language, however, was only general in reference, and did not contain the provision, which we have in this case, restricting the bondholders to such action as is provided in the mortgage. The distinction between the two cases rests upon this very important particular.

The appellant further argues that, if the terms of the mortgage are imported into the bonds, it will render them non-negotiable, contrary to the intent of the respondent and the express terms of the mortgage. It is true that the mortgage contained a provision that the bonds should be negotiable and should pass by delivery. But the bonds themselves on their faces restricted the rights of action to such as were provided in the mortgage. And when the mortgage itself is read as a whole, it is apparent, we think, that it did not intend to preserve to the bondholder the right to maintain an independent action at law upon the bond. While

the expressed intention may be an element in determining the negotiability of a written instrument, it is not conclusive.

If the instrument, taken alone, or in connection with another to which it makes proper reference, reveals its non-negotiability, in the technical sense of that term, it is not a negotiable instrument, despite declarations to the contrary by the parties concerned. *Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 298 Pac. 705, 79 A. L. R. 29. In the very case relied on by appellant, *Bank of California v. National City Co., supra,* we said, on rehearing, 141 Wash. 243, 251 Pac. 561:

"The fact that instruments may be payable to bearer and issued for the purpose of passing from hand to hand does not create them negotiable instruments, any more than other forms of personal property, which are transferable by delivery, by reason only of that fact can be said to be negotiable."

Appellant finally argues that the cumulative provision contained in article VIII, § 7, of the mortgage, which we have quoted above, preserves the common-law right of the individual bondholder to sue upon the bond. That section is but one of many providing for *remedies* upon default. If that section be read in the light of the context supplied by the entire article, it will be apparent, we think, that the instrument looks to and compels concerted, and not individual, action. The mortgage in its entirety seeks to provide for harmonious and cohesive action, and not a disintegrated one. The cumulative provision does not attempt to classify or define the kinds of action that may be brought or the persons who may maintain them, but simply seeks to enlarge the remedies already provided for by it for the protection of the bondholders as a whole. Under the provisions of the bonds themselves,

the common-law rights of action are taken away. Section 7 of article VIII of the mortgage does not purport to create a *right of action* where none existed before, but merely provides for cumulative or additional *remedies* where right of action already exists.

We are satisfied that, whether we consider the provisions of the bonds alone, or whether we consider them in connection with the provisions of the mortgage, the individual bondholder may not maintain an individual action under the conditions here present.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.