## McADOO v. OREGON CITY MFG. CO.
### No. 7293.

Circuit Court of Appeals, Ninth Circuit.
June 15, 1934.

Goldman & Altman, John C. Altman, and Richard S. Goldman, all of San Francisco, Cal., for appellant.

Herman Phleger, Maurice E. Harrison, and Brobeck, Phleger & Harrison, all of San Francisco, Cal. (Moses Lasky, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

GARRECHT, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of California, Southern Division, in favor of appellee.

Oregon City Manufacturing Company, appellee, is an Oregon corporation qualified and doing business in the state of California. On April 15, 1928, it entered into a trust agreement with the West Coast National Bank of Portland as trustee, pursuant to which appellee issued a half million dollars worth of serial gold notes, similar in form.

The appellant is the owner and holder of five of such notes, each one of which, omitting the serial number, is in words and figures as follows:

"Number                        Dollars
. . . . . .                          1000

"United States of America
"State of Oregon
"Oregon City Manufacturing Company
"Six Per Cent Gold Note

"Oregon City Manufacturing Company, a corporation organized and existing under the laws of the State of Oregon, for value received, acknowledges itself indebted and hereby promises to pay to bearer, or to the registered holder hereof, in case of registration, One Thousand Dollars, on the fifteenth day of April, 1932, or sooner as hereinafter provided, in United States Gold Coin of the present standard of value, with interest thereon at the rate of six per cent (6%) per annum, payable semi-annually on the 15th days of April and October in each year on presentation and surrender of the interest coupons hereto attached as they severally become due, both principal and interest payable at The West Coast National Bank of Portland, Oregon.

"Both principal and interest shall be payable without deduction for any taxes or government charges which the maker or Trustee may be required or permitted to pay, or to deduct, or to retain therefrom under or by virtue of any present or future law of whatsoever jurisdiction, except estate and inheritance taxes, income taxes levied by any State or Territory, and Federal income tax; and the maker will pay the normal Federal income tax, not exceeding a rate of two per cent (2%) per annum, which may become payable to the United States by any holder hereof upon the interest on this note under any present or future act of Congress.

"This note is one of an issue of like date and tenor, except as to denominations and maturities, issued under the provisions of a trust agreement between Oregon City Manufacturing Company and The West Coast National Bank of Portland, Oregon, as Trus-

tee, dated as of April 15, 1928, to which reference is hereby made for the terms and conditions under which this note is issued, the covenants of the maker, and the rights of the holder hereof.

"This note is subject to call and redemption on any interest paying date at its face value and accrued interest to date of payment, together with a premium equal to one-half per cent (½%) for every six (6) months intervening between the redemption date and the date of maturity. Notice of redemption must be published thirty (30) days prior to the redemption date, in the manner set forth in said trust agreement.

"This note shall pass by delivery, unless registered in the holder's name upon the books of the Trustee, after which no transfer shall be valid unless made upon said books and noted on this note; but the same may be discharged from registry by being transferred in like manner to bearer, and thereafter it shall be transferable by delivery, unless and until it is registered, which may be done from time to time, but the coupons hereto attached shall always be transferable by delivery only.

"Neither this note nor any of the coupons hereto attached shall be valid until this note shall be authenticated by the signature of the Trustee to the certificate endorsed thereon.

"In Witness Whereof, the Oregon City Manufacturing Company has caused this note to be signed by its President, and attested by its Secretary, and its corporate seal to be hereto affixed, and the annexed interest coupons to bear the facsimile signatures of said officers this fifteenth day of April, 1928.

"Oregon City Manufacturing Company
"[Seal]  By A. R. Jacobs, President
    "Attest: E. Schwab, Secretary.

"United States Internal Revenue Stamps in the amount required by law have been affixed to the Trust Agreement securing this note and duly cancelled."

· Indorsed:

"Trustee's Certificate

"This note is one of the issue described in the trust agreement referred to within. The West Coast National Bank of Portland, Oregon, as trustee. By D. W. Mackay, Trust Officer."

The portions of the trust agreement, the construction of which are involved and are decisive in this case, are as follows:

" * * * First party [appellee] does covenant and agree with Trustee for the equal and proportionate benefit of the several holders of the notes and coupons as hereinafter set forth:

"Article I.  *  *  *

"Section 6.  The notes herein described, may at the option of the first party, be redeemed from the holders on any semi-annual interest paying date, in the manner hereinafter provided, first party paying therefor the face value thereof and accrued interest to date of payment, together with a premium equal to one-half per cent (½%) for every six (6) months intervening between the redemption date and the date of maturity of each note redeemed.  *  *  *

"Article II.  *  *  *

"Section 2.  First party covenants and agrees that its plants and properties are free and clear of all liens and encumbrances, whatsoever, and that it will not so long as any of the notes issued hereunder remain outstanding and unpaid, create or suffer to be created, any mortgage, or other lien, or charge,  upon  its  property  or  plants. *  *  *

"Section 3.  First party covenants and agrees that it will pay the principal of and interest on every note herein described, at the dates and places, and in the manner herein provided.  *  *  *

"Section 5.  First party covenants and agrees that should it sell any of its real property, it will deposit all the proceeds from any such sale with the Trustee for application towards the payment of the outstanding notes of this issue.  Any such funds so deposited with the Trustee shall be used to call and redeem notes to the extent available in the manner hereinabove provided.  *  *  *

"Section 9.  First party covenants and agrees that it will make, execute, acknowledge, and deliver, or cause to be made, executed, acknowledged and delivered, all transfers, assignments, or other instruments, and do or cause to be done all acts and things as shall or may be necessary or reasonable, required by the Trustee, or the holders of the notes herein described, to effectuate and carry out the intention of this agreement. *  *  *

"Article IV.

"Section 1.  If any one or more of the following events, hereinafter called 'events of default' or 'default' shall happen, that is to say:—

"(a) Failure duly and punctually to pay the principal of or interest on any notes outstanding hereunder on the maturity date,

when and as the same shall become due and payable as herein provided, or

"(b) Failure shall be made in the observance or performance of any of the covenants, conditions or obligations in this agreement or in any representation, recital or covenant herein, or in the notes described herein, and first party shall not remedy such default or make good such representation, recital or covenant within thirty (30) days after written notice to do so shall have been served upon the first party by the Trustee.

"then the Trustee may in its discretion, and upon being requested in writing by the holders of fifty-one per cent (51%) of the amount of the notes then outstanding hereunder, shall declare and treat the notes and any and all money which may have been advanced or expended hereunder as immediately due and collectible. Trustee may take such proceedings at law or in equity as it may be advisable to take in order to enforce the payment of the notes and interest accruing or to accrue and to compel the specific performance of the covenants and obligations herein contained, and to obtain all other appropriate relief, and for that purpose may exercise in its discretion any and all rights whatsoever which may be available to it, whether by an action at law, a suit in equity, or otherwise. All remedies conferred upon the Trustee herein shall be deemed cumulative and not exclusive of each other, or of any remedy otherwise legally available.

"Section 2. All amounts collected by the Trustee in respect of the notes or of the interest thereon, whether by action, suit, or otherwise, shall be for the equal and prorata benefit of the holders of all outstanding notes and coupons after deduction of the Trustee's expenses, charges and advances, * * *.

"Section 3. The Trustee shall not be held to have declined to take any steps requested by the note holders declaring a default unless and until it fails to do so for a period of twenty (20) days after such request is made. Every holder of said notes and coupons accepts them subject to the express agreement that unless and until the Trustee shall have declined to act as herein provided every right of action hereunder by judicial proceedings or otherwise is vested exclusively in the Trustee, and that in no event except in case of such declination by the Trustee, shall any holder, or holders of notes, issued hereunder have any right to institute any suit or proceeding or take any action hereunder, or exercise any of the powers conferred on the Trustee. * * *

"Section 6. Every holder of notes and coupons issued hereunder and secured hereby by receiving and holding the same shall be conclusively presumed to have assented to all and singular provisions of this instrument.

"Section 7. It is one of the terms of said notes that the same shall not be paid prior to maturity without the payment of the premium provided therein in case of call and redemption. The declaration of a default shall constitute a call of the outstanding notes, and shall be deemed a calling of such notes for redemption, and the holders thereof shall be entitled to payment at the call and redemption price, equally and ratably."

The notes issued under this agreement were divided into three groups with respect to the date of maturity. Those in the first class came due on April 15, 1931, the next group April 15, 1932, and the others on April 15, 1933. The five notes held by appellant matured on April 15, 1932. The appellee paid the interest on these notes up to and including the interest payment due on said last date, but did not pay the principal sum or any part thereof, which became due and payable on that date. Appellant thereupon wrote to the Portland Trust & Savings Bank, successor to the trustee under the trust agreement, calling attention to the failure of appellee to pay the principal sum of said notes, and requested said trustee to commence action against appellee to enforce payment. Appellant offered to advance the necessary costs and expenses and agreed to indemnify the trustee by reason of the commencement of the action. The trustee declined to comply with the request, whereupon plaintiff instituted this action upon the five gold notes.

Appellee in its answer to the complaint denied for lack of information and belief appellant's ownership of the notes in question, and further denied appellant's right to sue by reason of the terms of the trust agreement, the pertinent portions of which were pleaded in general terms. Appellee further, as a special defense, set forth the trust agreement in full and alleged that the covenants thereof constituted a bar to an action upon any note by the holder thereof, unless and until the holders of at least 51 per cent. of the outstanding notes had made demand in writing upon the trustee to institute such action and the trusee had declined to do so. It was also alleged that no such demand had been made.

Appellant demurred to this answer and in an amendment to said demurrer separately demurred to the special defense. The general demurrer was overruled and the special

demurrer to this separate defense sustained. At the trial over appellant's objection the court permitted appellee to offer proof as to matters contained in the special defense. The cause was submitted and thereafter the court made an ex parte order granting leave to appellee to amend its answer to conform to the proofs by adding a special defense to its answer. The court then ordered judgment in appellee's favor.

The controlling assignments of error may be reduced to two, the first being the objection to the introduction of the evidence embodied in a stipulation as follows: "It is further stipulated by and between the parties that there were on April 15, 1932, and continued thereafter to be except as otherwise indicated below, outstanding $376,500 of the Gold Notes referred to in the complaint issued under the trust agreement therein referred to; that on ascertaining that it would be necessary to make default in the principal payment of said Gold Notes due April 15, 1932, the defendant informed the holders of the notes of a proposed plan of reorganization of the defendant company contemplating changes in the method of operation of the business of the defendant company, such as the elimination of various departments of the business and contemplating refinancing of the defendant calling for the refunding of the Gold Notes in the manner as described below; that with this plan in view, the holders of approximately 90% of the outstanding Notes, together with the Trustee, agreed with the defendant to withhold suits or actions on the Notes for a period of ninety days pending the refunding of the Gold Notes issued, and further agreed that if the issue were refunded during that period of ninety days, they would accept the new refunding bonds for the Gold Notes; that thereafter and during said ninety days period and after said April 15, 1932, the defendant company issued bonds secured by a mortgage and said note holders who had agreed as above indicated did trade in and exchange their Gold Notes for said refunding bonds, and by December 31, 1932, holders of over 90% of the Gold Notes outstanding on April 15, 1932, had made such exchange and accepted such refunding bonds in lieu of their notes; that plaintiff in this action is the only person or party or holder of any of said Gold Notes outstanding on April 15, 1932, who has made demand on the trustee to bring suit or action, and that no action has been brought or instituted on any of said notes by any party other than the plaintiff, and that the Trustee, and successor Trustee,

has determined not to bring any such action on any of said notes and has not brought any such action."

The other error is based on the lower court's interpretation of the trust agreement which was to the effect that no note holder could bring an action on any note, except by refusal of the trustee to accede to the request so to do made by the holders of 51 per cent. of the outstanding notes.

The evidence contained in the stipulation was admissible under the general answer, and the District Court committed no error in receiving such evidence, nor did the court err in changing its previous ruling sustaining the special demurrer to appellee's special defense, and restoring the special defense pleaded in the answer to conform with the proof.

The question presented by appellant is whether an individual holder of notes issued under the agreement set forth can maintain this action without the declaration of default by the trustee as provided in the agreement, and in derogation of the rights and in opposition to the desires of over 90 per cent. of the note holders. The evidence shows that a plan of reorganization providing for the refunding of all the notes and the refinancing of the appellee was accepted by over 90 per cent. of the holders of the gold notes outstanding on April 15, 1932, and that appellant here is the only person or party or holder of any of said gold notes outstanding as of that date who made demand on the trustee to bring suit or action.

Appellant asserts that the notes contain an unconditional promise to pay; that the terms of the trust agreement properly interpreted do not preclude appellant from bringing this action, but even if such provisions were intended to restrict such action, they would be inconsistent with the terms of the note, and, therefore, the alleged unconditional promise in the note must prevail over the alleged inconsistent provision of the trust agreement.

The notes in suit, however, contain the statement that they are issued " * * * under the provisions of a trust agreement * * * to which reference is hereby made for the terms and conditions under which this note is issued, the covenants of the maker, and the rights of the holder hereof."

The provisions incorporated in the trust agreement are not unusual, and to hold that they are inconsistent with or contradictory of the language of the notes would be to ignore the language of these instruments,

wherein attention is directed to the provisions of the trust agreement. The holders of the notes were charged with notice of all the terms of the agreement. Crosthwaite v. Moline Plow Co. (D. C.) 298 F. 466.

Appellant places reliance upon the case of Mack v. American Electric Telephone Co., 79 N. J. Law, 109, 74 A. 263, 264, and some language is quoted therefrom which tends to sustain her argument here made. There are a number of differences that would take up too much time and space to discuss, but there is a fundamental and outstanding distinction. The Mack Case was an action to recover the amount of forty defaulted interest coupons which had been detached from the bonds; a basic question to be determined was whether an unpaid detached coupon was still a part of the bond from which detached so as to come within the conditions of the bond. In answering that question the court said: "We think that the detached defaulted coupons are separate causes of action independent of the bond. A bond and the coupons are not parts of one debt. They are separate debts, and may be held by different persons, and suit on the one does not bar suit on the other. * * * It follows therefore that the unpaid detached coupons in question are not still a part of the bond from which they were detached so as to make the holder thereof a bondholder within the meaning of the conditions of the bond."

Accordingly the court held that the restrictions requiring a concert of one-third of the bondholders did not apply to a suit upon the defaulted interest coupons. As admittedly there were no restrictions, printed or otherwise, on the coupons, the opinion in its further discussion of the effect of such restriction was merely obiter dicta.

Appellant was fully advised, both through actual and constructive notice, of the terms of the agreement that the several notes held by her belonged to a series where all the holders had agreed that the collection of said notes was restricted by the provisions of the trust agreement. Among other things, it provided that: "Every holder of notes and coupons issued hereunder and secured hereby by receiving and holding the same shall be conclusively presumed to have assented to all and singular provisions of this instrument." Further, the agreement recites: "* * * Every holder of said notes and coupons accepts them subject to the express agreement that unless and until the Trustee shall have declined to act as herein provided every right of action hereunder by judicial proceedings or otherwise is vested exclusively in the Trustee, and that in no event except in case of such declination by the Trustee, shall any holder, or holders of notes, issued hereunder, have any right to institute any suit or proceeding or take any action hereunder, or exercise any of the powers conferred on the Trustee." Also: "* * * The declaration of a default shall constitute a call of the outstanding notes, and shall be deemed the calling of such notes for redemption, and the holders thereof shall be entitled to such payment at the call and redemption price, equally and ratably." And again: "All amounts collected by the Trustee in respect of the notes or of the interest thereon, whether by action, suit, or otherwise, shall be for the equal and pro rata benefit of the holders of all outstanding notes and coupons, after deduction of the trustee's expenses * * *."

The evident purpose of the agreement in the instant case was to prevent any individual note holder from securing an advantage or preference over the others. A default could not be declared or suit instituted until the trustee had been requested to take action by a majority of the note holders. A unity of action and rights was intended, as under the agreement the trustee's declaration of default as to any single note accelerated the due date of all the notes.

The notes issued were accepted with these reasonable restrictions upon the right of action by individual holders, and under such circumstances courts have held that a single note holder cannot proceed without the acquiescence of the other note holders as required by the agreement.

Counsel for the respective parties in laboring over the construction of the contract have had resort to refinements and technicalities of punctuation, as to whether the power of the trustee depended upon the use of a period or a comma. Such exhibitions of erudition, while illustrating the subtlety of the human mind, fail to illuminate the discussion. It is not the province of the court to seek ways of reading out expressions or meanings clearly within the terms of a contract. The court should do nothing other than diligently seek and honestly apply the true meaning of the parties. Any party who purchased the notes, if he read the same together with the trust agreement, which he is presumed to have done, must have known that the right to declare a default was vested in the trustee named in the agreement, and could not be exercised by the holder of the note until the happening of other things, and we hold that a fair interpretation of the trust

884

agreement sustains the view of the District Court that no action may be taken by any single note holder until at least 51 per cent. in amount of the holders of outstanding notes have requested the trustee in writing to declare a default and until he had failed to act for a period of twenty days. Allan v. Moline Plow Co. (C. C. A.) 14 F.(2d) 912; Boley v. Lake St. Elevated R. R. Co., 64.Ill. App. 305; Muren v. Southern Coal & Mining Co., 177 Mo. App. 600, 160 S. W. 835.

Affirmed.