AMERICAN NATIONAL BANK *vs.* AMERICAN WOOD PAPER COMPANY.

A corporation issued its coupon bonds dated May 1, 1890, for one thousand dollars each, payable to a trust company or bearer, or in case of registry to the registered owner in ten years after the date thereof, with a reservation of the privilege of paying the same at any time after five years, with interest at the rate of six per cent. per annum payable semi-annually. The bonds were secured by a mortgage given to the trust company as trustee for the bondholders in which it was provided that in case of default in the payment of the semi-annual interest at any time for more than six months after demand made, the trustee shall foreclose the mortgage by entry or sale upon the written request of the holders of one third of the amount of outstanding bonds, "it being distinctly understood and agreed that in the event of any such default the whole principal sum of all of said bonds then outstanding shall forthwith become due and payable." The bonds recited that they were secured by the mortgage.

*Held,* that the bonds were negotiable securities on which the holder is entitled to sue in his own name.

*Held,* further, that Pub. Stat. R. I. cap. 142, §§ 6, 7, of promissory notes, are declaratory and remedial and not intended to exclude other forms of negotiable paper.

*Held,* further, that the bonds did not make the terms of the mortgage a part of the contract so as to give a right of action for the principal of the bonds before maturity, the provision in the mortgage that upon default in the payment of interest for more than six months after demand the principal shall become due and payable, being for the purpose only of foreclosure by entry or sale.

DEBT on bond. Certified from the Common Pleas Division on demurrer to the declaration.

The plaintiff sues as the purchaser and bearer of certain coupon bonds for $1000 each, issued by the defendant corporation, all of the same tenor and date as follows:

## UNITED STATES OF AMERICA.

STATE OF PENNSYLVANIA.

No.                                                                                                    $1,000.

THE AMERICAN WOOD PAPER COMPANY.

*First Mortgage Six Per Cent. Bond.*

KNOW ALL MEN BY THESE PRESENTS, that THE AMERICAN WOOD PAPER COMPANY, a corporation duly organized under the laws of the State of Rhode Island and expressly authorized

by Act of Assembly of the Commonwealth of Pennsylvania, to hold land and to have its business as a corporation in the State of Pennsylvania, hereby acknowledges itself indebted to the Girard Life Insurance, Annuity and Trust Company, of Philadelphia, or bearer, in case of registry to the registered owner hereof, in the sum of One Thousand Dollars lawful money of the United States of America, which sum the said Company promises to pay to the said The Girard Life Insurance, Annuity and Trust Company, or bearer, or in case of registry to the registered owner hereof, at the office of The Girard Life Insurance, Annuity and Trust Company in the City of Philadelphia in ten years from the date hereof, to wit: on the first day of May, Anno Domini, one thousand nine hundred, reserving the right and privilege of paying the same at any time after five years from the date hereof, with interest thereon at the rate of six per cent. per annum, payable semi-annually on the first day of the months of May and November in each year on delivery of the annexed coupons as they severally become due without any deduction for any tax on the principal or interest which the Company by any present or future law of the United States or of the State of Pennsylvania, may be required to retain therefrom for National or State purposes; the Company hereby agreeing to assume payment thereof.

This Bond is one of a series of three hundred (300) bonds for one thousand dollars ($1,000,) each numbered consecutively from one to three hundred both inclusive, all of like tenor and date, and payment of the principal and interest is secured by a duly recorded First Mortgage of the American Wood Paper Company for three hundred thousand dollars ($300,000.) upon all its property, lands, works, buildings, machinery and real estate in the State of Pennsylvania, bearing even date herewith, duly authorized, executed and delivered by the said Company to the Girard Life Insurance, Annuity and Trust Company of Philadelphia, the Trustees in trust to secure the payment of the principal and interest of the said Bonds; which payment is to be further secured by a sinking fund to be created by the annual appropriation of

not less than five per centum of the principal of said mortgages, as more particularly therein mentioned and described. This Bond may be registered in the owner's name, and thereafter no transfer hereof shall be valid unless made on the books of The Girard Life Insurance, Annuity and Trust Company of Philadelphia, by the registered owner or its duly authorized attorney and duly certified hereon, but it may be discharged from registry by transfer to bearer and thereon be transferable by delivery, but may again be registered in owner's name as before. The registry of this Bond shall not restrain the negotiability of the coupons by delivery merely, but the coupons may be surrendered and the interest as above be made payable to the registered owner or by order only, such surrender to be certified hereon. This Bond shall not become obligatory until it shall have been authenticated by a certificate endorsed hereon and duly signed by the Trustee.

In Witness Whereof, the said The American Wood Paper Company has caused these presents to be signed by its President and attested by its secretary and the common or corporate seal hereto affixed, and has also caused the name of its Treasurer to be affixed to the coupons hereunto annexed this first day of May, Anno Domini, one thousand eight hundred and ninety.

GEO. H. BUSIL, *Secretary.*    (CORPORATE SEAL)
CHAS. F. MASON, *President.*

It is provided in the mortgage given to secure the bonds that if the American Wood Paper Company, its successors and assigns, shall at any time hereafter after demand made, make default or neglect for any period exceeding six months to pay the semi-annual interest on the bonds when and as the same shall become due and payable, or after demand made, make default or neglect to pay the principal sum of each and all of the bonds when and as the same shall become due and payable according to the terms thereof, then and in each of said cases the trustee shall upon the written request of holders of one third of the aggregate amount of all the outstanding bonds, enter upon and take possession of the mortgaged

property and apply the income to the payment of bonds, or after or without such entry, upon the written request of holders of a like amount of outstanding bonds, proceed to sell the mortgaged property and apply the proceeds to the payment of the bonds "it being distinctly understood and agreed that in the event of any such default the whole principal sum of all said bonds then outstanding shall forthwith become due and payable.

*July* 8, 1895.    STINESS, J.    The plaintiff sues to recover the principal and interest due on certain bonds and coupons issued by the defendant May 1, A. D. 1890, and payable May 1, 1900, or sooner after five years.    The bonds are secured by a mortgage of all the defendant's property, in the State of Pennsylvania, given to a trustee for the bondholders, in which it is provided that in case of default in the payment of interest for more than six months, the principal of said bonds shall be due and payable.    The declaration sets out the bonds and mortgage, profert of which is made, and alleges default in payment of interest for more than six months after demand made therefor.    The defendant demurs to the declaration, upon several grounds ; but the two grounds pressed in the argument are that the bonds are not negotiable so as to give the plaintiff a right of action in its own name, and that the terms of the mortgage cannot be imported into the bonds so as to give a right of action for the principal thereof before maturity.

We think that the bonds must be treated as negotiable securities.    While there has been some diversity of opinion upon this subject, the tendency of recent decisions and the weight of authority and reason seem now to be in favor of negotiability.    At first, before such bonds had become common, courts naturally held that they lacked the technical and established characteristics of negotiable instruments.    Thus, in *Crouch* v. *The Credit Foncier*, L. R. 8 Q. B. 374 (1873), it was held that the contract embodied in similar bonds prevented them from being promissory notes, even if they had been without a seal, and that the custom to treat them as negotiable, being of recent origin, could not attach an inci-

dent to a contract contrary to the general law. But in *Goodwin* v. *Robarts*, L. R. 10 Exch. 337 (1875), the court, by Cockburn, C. J., does not concur in thinking the latter ground conclusive. In the recent case *Venables* v. *Baring*, L. R. 3 Ch. Div. 527 (1892), American railroad bonds, upon the evidence of an American lawyer as to their negotiability in this country, were held to have acquired in England, in the city of London, among English merchants, the character of negotiability. Notwithstanding the limitations of this decision we think it may be taken as practically settling the rule in England. See also *In re Imperial Land Co.*, L. R. 11 Eq. Cas. 478. In this country the decisions have been quite explicit. The principle on which they rest was well stated by Mr. Justice Grier, in *Mercer County* v. *Hacket*, 1 Wall. 83 (1863), as follows :

"This species of bonds is a modern invention, intended to pass by manual delivery and to have the qualities of negotiable paper ; and their value depends mainly upon this character. Being issued by States and corporations they are necessarily under seal. But there is nothing immoral or contrary to good policy in making them negotiable, if the necessity of commerce require that they should be so. A mere technical dogma of the courts of common law cannot prohibit the commercial world from inventing or using any species of security not known in the last century. Usage of trade and commerce are acknowledged by courts as part of the common law, although they may have been unknown to Bracton or Blackstone. And this malleability to suit the necessities and usages of the mercantile and commercial world is one of the most valuable characteristics of the common law. When a corporation covenants to pay to bearer and gives a bond with negotiable qualities, and by this means obtains funds for the accomplishment of the useful enterprises of the day, it cannot be allowed to evade the payment by parading some obsolete judicial decision that a bond, for some technical reason, cannot be made payable to bearer. That these securities are treated as negotiable by the commercial usages of the whole civilized world and have received

the sanctions of judicial recognition, not only in this court (*White* v. *Vermont R. R.*, 21 How. 575), but of nearly every State in the Union, is well known and admitted."

After this strong statement it is needless to say more, except to refer to a few cases to the same effect. *Kneeland* v. *Lawrence*, 140 U. S. 209; *Chicago Railway Co.* v. *Merchants' Bank*, 136 U. S. 268; *DeHass* v. *Roberts*, 59 Fed. Rep. 853; *Reid* v. *Bank of Mobile*, 70 Ala. 199; *National Exchange Bank* v. *Hartford, Prov. & Fishkill R. R. Co.*, 8 R. I. 375; 1 Randolph on Commercial Paper, § 74, note 1, and cases cited. It is true that some States have statutes which declare bonds of this kind to be negotiable, (see 2 Amer. & Eng. Ency. of Law, 319), and the point is taken that it is not so in this State, since Pub. Stat. R. I. cap. 142, §§ 6, 7, relate only to promissory notes. We do not think, however, that this fact prevents us from holding these bonds to be negotiable. Such statutes are declaratory and remedial and are evidently not intended to exclude other forms of negotiable paper. Bonds of this sort are clearly within the intent of the statute to give a title by delivery and a right of action to the holder of negotiable paper, and the bonds in effect are promissory notes. The special provisions contained therein are not such as to deprive them of their fundamental character of a promise to pay at a certain time. These bonds are not given as collateral to a note secured by mortgage, but the mortgage is security for the bonds themselves. *Riker* v. *Sprague Manuf. Co.*, 14 R. I. 402. See *Costello* v. *Crowell*, 127 Mass. 293, and 134 Mass. 280.

Upon the question of importing the terms of the mortgage into the contract, so as to give a present right of action for the principal, we think the objection is well taken. The bonds do not make the terms of the mortgage a part of the contract. They simply recite that they are secured by a mortgage. Turning to the mortgage we find that in case of default one third of the bondholders, in amount, may require the trustee to sell the property and in the same clause occurs the provision that the bonds shall forthwith become due and payable upon the default. We think that this is

a provision only for the purposes of foreclosure by entry or sale.   If one third, in amount, of the bondholders is required for a sale, out of the proceeds of which the principal is to be paid, it would be quite incompatible with this limitation to hold that a single bondholder could precipitate the maturity of the bonds by a suit.   When one is due all are due, and the provision implies that the large majority may think it best not to foreclose at once, and, if so, the right to give time is secured in this provision.   It is a provision for a special purpose and not intended to give a right of action upon default, independently of foreclosure proceedings.   Such is the construction given to similar provisions in *Bachelder* v. *Council Grove Water Co.*, 131 N. Y. 42 ; *White* v. *Miller*, 52 Minn. 367 ; *McClelland* v. *Bishop*, 42 Ohio St. 113 ; *Mallory* v. *West Shore & Hudson River R. R. Co.*, 35 N. Y. Superior Court, 174.

Of the cases cited by the plaintiff to sustain the point that the bonds and mortgage, being connected and contemporaneous, are to be construed together, nearly all are suits for foreclosure, or actions for a balance due after foreclosure. This is a very different matter.   Clearly after such an agreement the obligation may be treated as due for the purpose of foreclosure and the maker of the note or bond would be liable for the balance remaining due, in some form of action ; but whether upon the note or the covenant we are not now called upon to say.   Such a liability, however, does not give the right of action which is claimed in this case.   *Venables* v. *Baring, supra*, was a suit to establish a title.   *Bank* v. *Peck*, 8 Kan. 660, and *Chambers* v. *Marks*, 93 Ala. 412, are in favor of the plaintiff's claim, but we think that the weight of authority, the purpose of the provision and the reason on which its construction depends are against it.

Our conclusion is that the demurrer to the negotiability of the bonds must be overruled and the demurrer to the statements of the plaintiff's present right of action must be sustained.

*Richard B. Comstock & Rathbone Gardner*, for plaintiff.
*Arnold Green & James Tillinghast*, for defendant.