Oster, Appellant, vs. Buildings Development Company, Respondent.

Alshuler, Appellant, vs. Buildings Development Company, Respondent.

*November 9, 1933—January 9, 1934.*

482

For the appellants there were briefs by *Gold & McCann*, attorneys, and *Morris Karon* of counsel, all of Milwaukee, and oral argument by *Mr. Karon*.

For the respondent there was a brief by *Poss, Toelle & Schuler*, attorneys, and *Benjamin Poss* and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Poss* and *Mr. Brazy*.

A brief was also filed by *Goggins, Brazeau & Graves* of Wisconsin Rapids, as *amicus curiæ*.

WICKHEM, J.  The defendant is a Wisconsin corporation and the owner of a ninety-nine-year leasehold interest in business property situated in the city of Milwaukee.  On March 28, 1927, defendant executed a deed of trust to M. Ernest Greenebaum, Jr., conveying this leasehold interest as security for a certain bond issue.  Plaintiff Blanche Oster is the owner and holder of five bonds each in the principal sum of $1,000, and plaintiff Cecilia Alshuler is the owner of

five bonds in the total principal sum of $3,100. The leasehold estate is also subject to a second mortgage securing an issue of leasehold bonds.

On December 1, 1930, defendant defaulted with respect to an instalment of principal which became due on that date. Subsequent defaults with respect to principal occurred on June 1, 1931, and December 1, 1931. On or before May 23, 1932, the trustee under the first mortgage or trust deed served notice upon the defendant stating that pursuant to demand of the Bondholders' Protective Committee, he had declared the principal of all bonds outstanding to be due and immediately payable. Demand was made upon defendant that it pay to the trustee, for the benefit of holders of bonds and coupons outstanding, the entire amount due thereon for principal and interest, with interest at the rate of seven per cent. per annum upon the overdue principal. This notice was given pursuant to an acceleration clause in the first trust deed, by the terms of which the trustee was given the power, and upon the written request of holders of not less than two per cent. of the principal amount of outstanding bonds and upon being indemnified, the duty of declaring the principal of all bonds outstanding to be due and payable immediately in the event of defaults on the part of the mortgagee which shall have continued unrepaired for a period of thirty days.

On May 23, 1932, the trustee under the first trust deed commenced an action against defendant (joining the National Bank of Commerce as trustee for the second trust mortgage). The complaints in these actions alleged the default of the defendant, asked judgment for the entire principal of the outstanding bonds, including those owned by the plaintiffs, and demanded foreclosure and sale of the mortgaged premises, the proceeds of the sale to be applied upon the money judgment.

On May 25, 1932, the circuit court for Milwaukee county entered an order in the trustee's action, enjoining individual holders of bonds from commencing any action in law or in

equity upon said bonds, or any actions in garnishment or attachment for the purpose of reaching rents, income, profits, and issues of the mortgaged premises. The order directs individual bondholders to apply to the court for permission to become parties plaintiff in the foreclosure action, if any deem their rights not fully protected by said suit. A copy of this order was published in the Daily Reporter, a newspaper devoted to legal notices, and mailed to the holders and legal owners of bonds in so far as their addresses were known to the trustee, and this was done within twenty days after the entry of the order. On October 1, 1932, the action of Blanche Oster against the defendant was commenced. At the same time Blanche Oster commenced an action in garnishment in which tenants of the ground floor of the office building secured by the trust deed were named as garnishees. On October 5, 1932, the trustee obtained an order directing plaintiff Oster to show cause why she should not be compelled to dismiss her action against defendant and also her garnishment action as being in violation of the restraining order of May 25, 1932. Plaintiff Oster appeared specially in response to the order to show cause, and objected to the jurisdiction of the court over her person and over the subject matter covered by said order to show cause, upon the ground that the order of May 25, 1932, is void and of no effect as against her because issued without notice to her, without giving her an opportunity to be heard, and without the service of any process or notice upon her. Upon hearing, on October 15, 1932, the court held the order of May 25, 1932, to be void and of no effect as to the plaintiff Blanche Oster. Cecilia Alshuler commenced her action against the defendant on November 1, 1932, and at the same time commenced garnishment action against tenants of the building, the leasehold interest in which is conveyed by the trust deed. These actions were tried on March 28, 1933.

The answer of the defendant set up the foregoing facts as well as certain provisions in the trust deed and bonds

which will hereafter be discussed in detail, and asked dismissal of plaintiffs' answers upon the grounds of the pendency of the foreclosure action by the trustee.

The principal question involved in this case relates to the right of an individual bondholder, while an action by the trustee to foreclose the trust deed and to recover the indebtedness secured thereby is pending, to disregard the foreclosure action, sue upon the bonds and interest coupons, and garnishee the rents and profits of the building, the leasehold interest in which forms the security for the bond issue.

Plaintiffs contend that the bonds here involved are negotiable; that plaintiffs are holders in due course; that plaintiffs, having had no previous notice of the trustee's action, and having refused to deposit their bonds, and the trustee never having taken judgment in his action although no defense was interposed, are entitled to sue upon the instruments in disregard of the trustee's action. Since plaintiffs' bonds are not due except as they have been matured by the operation of acceleration clauses in the trust deed, it is necessarily plaintiffs' contention that the acceleration by the trustee of the maturity of the bonds operates to mature plaintiffs' bonds for all purposes. The interest coupons, in so far as they are relied upon by plaintiffs in this action, are due and do not require the assistance of an acceleration clause.

Plaintiffs start with the assumption that the bonds here involved are negotiable instruments; that bonds identical in form and secured by a trust deed containing similar provisions were held negotiable by this court in the recent case of *Pollard v. Tobin,* 211 Wis. 405, 247 N. W. 453. With this as a major premise, plaintiffs insist that under sec. 116.56 of the Negotiable Instruments Law, the right of the holder to sue in his own name upon the instrument is an inseparable incident of negotiability which cannot be abridged, and that the fact that the trust deed authorizes the trustee to sue upon the bond cannot destroy the bondholder's right to sue. It is further contended that the trust indenture does not in fact

restrict the right of the bondholder to bring an independent action upon either bonds or interest coupons.

The contention of plaintiffs that, the bonds being negotiable, the trust deed cannot validly restrict the bondholder's right to sue upon them, does not present the correct starting point for a consideration of this case. The first problem is to ascertain whether the rights of the bondholders are, by the terms of the bond, subject to the provisions of the trust deed. If they are, the next question is whether the provisions of the trust deed limit the right of the bondholders to sue. For purposes of convenience, questions arising upon the bonds and the interest coupons will, for the most part, be separately dealt with. The bonds all contain the following provision:

"For a description of the mortgaged property, the nature and extent of the security, and the terms and conditions under which this bond is issued, secured and held, reference is made to said deed of trust, *to all the provisions of which this bond and each coupon thereon are subject with the same effect as if the same were herein fully set forth.*"

The bonds and coupons, unlike those involved in the case of *Pollard v. Tobin, supra,* are expressly made subject to all of the provisions of the trust deed, with the same effect as though these provisions had been expressly set forth in the bond. It would not be difficult to marshal an impressive array of authority to the effect that this clause effects an incorporation into the bonds of all of the provisions of the trust deed, and renders the bonds non-negotiable, but it is unnecessary to determine this question here. See 38 Yale Law Journal, 825. Since the bonds are expressly made subject to the terms of the trust deed, all restrictions contained therein upon the right of the bondholder to sue must be read into the bonds, the bondholder must be held to have notice of these restrictions, and there can be no question of repugnancy between the trust deed and the instrument. If the provisions in the bonds make them non-negotiable, plaintiffs'

major premise becomes untenable. If they do not, the bonds are negotiable in spite of the incorporated provisions and not by disregarding them or treating them as wholly ineffective. Hence the consideration of this case must commence with the proposition that any limitations in the trust deed upon the right of the bondholder to sue are binding upon the holder of the bonds and coupons.

It next becomes important to consider the provisions of the trust deed to ascertain the rights of the trustee and the limitations upon the bondholders. It is the right of the trustee, under the provisions of the trust deed, upon default, to proceed in his discretion (except when requested by the holders of two per cent. of the principal amount of the bonds and upon being indemnified when it becomes the duty of the trustee to act) to "protect and enforce his rights and the rights of the bondholders under this deed of trust, by a proceeding or proceedings at law or in equity, whether for specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the foreclosure of the lien hereof, or for the enforcement of any other proper, legal or equitable remedy as the trustee, being advised by counsel, shall deem most effectual to protect and enforce the rights aforesaid."

It is further provided that upon default the trustee "as trustee of an express trust shall be entitled to recover judgment for the whole amount so due and unpaid. Said judgment may be recovered as aforesaid either before or after or during the pendency of any proceedings for the enforcement of the lien hereof upon said property and premises, and the right of the trustee so to recover judgment shall not be affected by any sale hereunder or by the exercise of any other right, power, or remedy for the enforcement of the provisions of this deed of trust or for the foreclosure of the lien hereof, and in case of a sale of said property and premises and of the application of the proceeds of such sale to the pay-

ment of the debt, the trustee in his own name and as trustee of an express trust shall be entitled to enforce payment of and receive all amounts then remaining due and unpaid upon the indebtedness hereby secured, for the benefit of the holders thereof, and shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest." It is further provided that "it is hereby declared and agreed *as a condition upon which each legal holder or holders of all or any of said bonds receives and holds the same,* that no holder or holders of any of said bonds or coupons shall have the right to institute any proceedings in law or in equity, of whatever character or kind, for the foreclosure of this deed of trust or for the execution of the trusts herein provided," unless the trustee shall have failed to act.

These provisions offer insurmountable barriers to plaintiffs' actions. The trustee, as trustee of an express trust, is given the right not only to foreclose the security but to sue and recover the principal sum of the debt as represented by the bonds. There are express provisions prohibiting any action at law or suit in equity by the holder of a bond or a coupon seeking the foreclosure of the deed of trust or "the execution of the trusts herein provided," one of which is the enforcement of the debt secured by the trust deed, unless application is first made to the trustee and unless the trustee shall have failed within sixty days after the notice to institute proceedings for the foreclosure of the trust deed or for the execution of the trusts therein provided. It is provided that all rights of action under the deed of trust, or under any bond or coupons secured thereby, may be enforced by the trustee in his discretion without the possession of any of the bonds or coupons or the production thereof on any trial or proceedings. It is difficult to see how the intention to disable the bondholders from commencing action except upon the default of the trustee, could have been stated more clearly or unambiguously.

There is a further difficulty, so far as the bondholders are concerned. The acceleration clause permitting the trustee, upon default, and requiring him upon request of the bondholders, to declare the entire sum of the bonds due, must, under all the circumstances of this case, be considered to mature the bonds solely for the purposes of foreclosure by the trustee and execution by it of the trusts provided for in the trust deed. It is usually held that such is the effect of acceleration clauses in trust deeds, unless a contrary construction is imperative. *Morton v. Rock Bottom Coal Co.* 91 W. Va. 169, 112 S. E. 396; *American Nat. Bank v. American Wood Paper Co.* 19 R. I. 149, 32 Atl. 305. We see no escape from this conclusion in this case. Having in mind the clear and unambiguous manner in which this trust deed has reserved to the trustee the right to sue on the debt and to foreclose, and having further in mind the fact that the trust deed permits the trustee to waive a default as well as to accelerate the bonds by reason of it, the conclusion is irresistible that these provisions operate only for the purposes of the trustee in executing his duties under the trust. In *Watson v. Chicago, R. I. & P. R. Co.* 169 App. Div. 663, 670, 155 N. Y. Supp. 808, at p. 813, the court said:

"The plaintiff claims that it has a common-law right to sue upon the bond as an obligation to pay a fixed amount of money. The answer is that the obligation was to pay on the 1st day of November, 2002, which date has not arrived. So the plaintiff is driven to the trust agreement, and therein, she says, there is a provision upon default in payment of an interest instalment for declaring the principal of all outstanding bonds to be due and payable immediately; that there was such default; that the trustee declared the principal to be due; that such declaration was for her benefit, and she is therefore entitled to her action. If she goes to the agreement, she is bound by all the relevant parts thereof; but it is therein provided that the trustee may in its discretion, upon the written request of the holders of a majority amount of the bonds, make such declaration. And the power was given

to it to proceed to sell and convert into money the securities constituting the trust estate, or to proceed by a suit or suits at law or in equity to enforce the payment of the said bonds and coupons, or to foreclose the trust agreement and sell the securities, and it was expressly provided in section 1 of article 9, quoted *supra*, that:

" 'No holder of any bond or coupon issued hereunder shall have the right to institute any suit, action, or proceeding at law or in equity upon or in respect of this trust agreement, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for any other remedy under or upon this trust agreement; . . . it being intended that no one or more holders of said bonds or coupons shall have any right in any manner whatever to affect, disturb, or prejudice the lien of this trust agreement by his or their action, or to enforce any right thereunder, except in the manner herein provided.' "

See, also, notes 27 Columbia Law Review, 443, and 27 Columbia Law Review, 579; *Batchelder v. Council Grove Water Co.* 131 N. Y. 42, 29 N. E. 801; *Morton v. Rock Bottom Coal Co., supra.* Plaintiffs cite *Westboro Lumber Co. v. Schwenker,* 199 Wis. 350, 226 N. W. 313; *Schoonmaker v. Taylor,* 14 Wis. 313, and *Connecticut General Life Ins. Co. v. Johns,* 201 Wis. 346, 230 N. W. 66, to the effect that it has always been held in this state that mortgage provisions accelerate the due date of the note as well as the mortgage. That this is the rule in Wisconsin may be conceded without affecting the foregoing conclusion. In view of the fact that the trustee under the trust deed, as the trustee of an express trust, is vested with the right to sue; that the deed disables the bondholders from suing except in case of failure by the trustee to carry out his duties, and that the trustee is authorized to waive default, the acceleration clauses are not effective to vest the bondholders with a right to sue individually, at least until such time as, by reason of the trustee's failure to act, such a right is conferred by the deed.

There has been some conflict in the authorities as to whether, standing alone, a provision authorizing the trustee

to sue upon the principal obligation as the trustee of an express trust, is sufficient to confer such right and deprive the bondholders of the right to sue, by relegating them to the position of *cestuis*. See *Mackay v. Randolph Macon Coal Co.* 178 Fed. 881; *Watson v. Chicago, R. I. & P. R. Co., supra; In re A. J. Ellis, Inc.* 242 Fed. 156; *Mack v. American Elec. Tel. Co.* 79 N. J. L. 109, 74 Atl. 263; *Lane v. Equitable Trust Co.* 262 Fed. 918. When there is added, however, a clause expressly depriving the bondholder of the right to sue, it is clear that this result has been effectively accomplished. In a note in 27 Columbia Law Review, p. 581, it is stated:

"The safest mode of accomplishing these purposes would seem to be by including in the indenture an express negative provision, depriving the bondholder of the right to sue on the primary obligation to overcome the presumption of legal ownership of the primary chose, created by the possession of the evidence of that chose—the bond, by the bondholder."

The situation with respect to the interest coupons is different from that with respect to the bonds in two principal respects: first, the interest coupons which are involved in this action are due without the operation of any acceleration clause,—the bonds are not; second, the interest coupons are in form negotiable, merely containing a reference to the fact that the amount due on the coupon is six months' interest upon a certain numbered bond of the issue involved in this case. It is contended that whatever conclusions are reached as to bonds, the interest coupons are due and payable; that they are clearly negotiable, and that they are subject to no conditions. To this conclusion we cannot agree. The coupons in this case are attached to the bonds. It is unnecessary to decide what the situation would be had the coupons been detached and sold to a person who took without notice of the terms of the trust deed. While the bonds and coupons are separate contracts, in spite of the fact that the coupons are physically attached to the bonds, the holder of an interest

coupon which is attached to such a bond as is involved in this action, cannot be considered to hold the coupon unaffected by the conditions and restrictions contained in the trust deed and made thereby specifically applicable to coupons as well as bonds. *McClelland v. Norfolk Southern R. Co.* 110 N. Y. 469, 18 N. E. 237; *Muren v. Southern Coal & Mining Co.* 177 Mo. App. 600, 160 S. W. 835; *Watson v. Chicago, R. I. & P. R. Co., supra; Bartol v. Gottlieb-Bauernschmidt-Straus, Brewing Co.* 129 Md. 32, 98 Atl. 286. In *Bailey v. County of Buchanan,* 115 N. Y. 297, 22 N. E. 155, the court said:

"It is true that past-due coupons, payable to bearer, when detached from the bonds, are for many purposes independent, separate instruments. They may be negotiated, and may be sued upon by the holder without the production of the bonds. . . . But the coupons, nevertheless, always have some relation to the bonds. Their force and effect and character may be determined by reference to the bonds. They are secured by the same mortgage, and, although unsealed, are specialties, like the bonds, and are governed by the same statute of limitations which is applicable to the bonds. Until negotiated or used in some way they serve no independent purpose; and while they are in the hands of the holder they remain mere incidents of the bonds, and have no greater or other force or effect than the stipulation for the payment of interest contained in the bonds; and while they remain in the ownership and possession of the owner and holder of the bonds, it can make no difference whether they are attached to or detached from the bonds, as they are then mere evidences of the indebtedness for the interest stipulated in the bonds."

It is our conclusion that the plaintiffs are in no better position with reference to the interest coupons than they are with reference to the bonds themselves, and that upon neither are they presently entitled to maintain this action. It follows that the actions were properly dismissed, and other questions raised herein become immaterial.

*By the Court.*—Judgments affirmed.