**Robert D. Gordon and David S. Law, Executors of Will of Donald A. Gordon, Appellee, v. Conlon Corporation, Appellant.**

### Gen. No. 42,641.

Opinion filed June 16, 1944.

RUDOLPH L. JOHNSON and DAVID A. SKALITZKY, both of Chicago, for appellant.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellee; DON M. PEEBLES, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff was the owner of two unsecured $1,000 Six Per Cent Sinking Fund Debenture Gold Bonds which were part of a series issued by defendant, Conlon Corporation, in 1926, under a trust agreement with the Chicago Trust Company, as trustee, in the aggregate sum of $450,000. When the bonds matured in 1936 the unpaid balance of the issue, totaling $205,700, was extended by agreement of the bondholders to April 1, 1941. Plaintiff's two bonds were deposited for extension pursuant to that agreement. The unpaid balance of $166,300 became due by extended maturity in 1941. The company then negotiated for a second five-year extension, to which 87 per cent of the outstanding bondholders consented. Plaintiff did not

agree to the second extension, but demanded payment of his $2,000 of bonds. Upon the company's refusal to pay, and without making any prior demand upon the trustee to institute an action in his behalf or on behalf of all bondholders, plaintiff brought suit in his own name. The cause was heard by the court upon stipulated facts, resulting in a finding and judgment in favor of plaintiff for $2,210 and costs, from which defendant appeals.

The sole question presented is whether the trust agreement imposes such a limitation upon the bondholder as to prevent him from bringing suit in his own name at the maturity of the bonds, upon failure of the company to make payment according to their tenor. The answer depends upon the interpretation to be given to the so-called no-action provision of the trust agreement. The bonds in suit recite that they were issued under a certain trust agreement "to all provisions of which . . . this bond and the rights of the bearer or registered holder are subject and . . . which by receipt hereof the bearer or registered holder accepts." Section 1 of article six of the trust agreement specifies and enumerates the following "Events of Default": (a) failure to pay interest when due, (b) failure to make redemption of bonds after notice of redemption has been given and published, (c) failure to maintain sufficient assets, (d) failure to maintain the sinking fund, (e) failure in the observance of any performance of a covenant contained in the bond, and (f) a ceasing to do business on the part of the company. Following the "Events of Default" referred to, section 6 of article six contains the following provision, upon which the defense herein is predicated: "All rights of action on or because of the bonds and interest coupons of any of them, or under this trust agreement, except as hereinafter provided, are hereby expressly declared to be vested exclusively in the Trustee, and such rights may be enforced by the

Trustee without the possession of any such bonds or interest coupons. No holder of any such bond or interest coupon shall have any right to institute any suit, action or proceeding for the enforcement of any of the terms of this agreement or of such bonds or coupons without first giving to the Trustee written notice that one or more of the events of default hereinabove mentioned has occurred, nor unless the holders of one-fourth in principal amount of the then outstanding bonds shall have requested the Trustee in writing, and shall have afforded it reasonable opportunity to institute such action, suit or proceeding in its own name, and shall have offered satisfactory indemnity to the Trustee, and shall have deposited their bonds with the Trustee if so requested by the Trustee; but if the Trustee shall have failed to take such action for thirty (30) days after such written notice, request, offer of indemnity and deposit of bonds, the holder of any bond or bonds may proceed thereon.''

Plaintiff seeks to support the judgment entered in his favor primarily on the ground that the provisions of the trust agreement do not apply to any action brought at law, for the recovery of the principal, after maturity of the bond by lapse of time, and that the so-called restrictive provision appearing upon the face of the bond is simply a reference to the provisions of the trust deed with respect to the rights of a bond-holder prior to maturity and does not in any manner limit or deny his right to sue at law after the bonds mature. Defendant, on the other hand, takes the position that by virtue of the language appearing on the face of the bonds, plaintiff has no right to sue in his individual capacity; that by the language of the bond and the trust agreement under which the bonds were issued, all rights of action, including suit at law on the bond after maturity, are vested in the first instance, exclusively in the trustee, and that no right of action at law vests in the bondholder in the second

instance until he has performed the conditions precedent expressed in the contract sued upon, namely, a proper demand upon the trustee to institute suit and the failure of the trustee thereafter to take action within a specified time.

Both parties say there is no case in Illinois precisely similar to the one here presented. *Oswianza v. Wengler & Mandell, Inc.*, 358 Ill. 302, which is commonly cited, presents different questions. In that case, unlike the one at bar, the note was secured by mortgage or trust deed, and the principal question involved was whether the no-action feature of the trust deed could be read into the bonds or, in other words, whether the bonds by their terms were subject to the provisions of the trust deed affecting the right to sue. The court held that the language incorporated in the bond was applicable only to the description of the mortgaged property and the nature and extent of the security, and referred to the rights conferred upon the bondholders in case they desired to look to the securities for payment of the bonds. The trust deed in that case contained a complete no-action clause vesting exclusive right of action in the trustee, but because the language of the bond did not reasonably incorporate therein, by reference, the no-action clause of the trust deed, the court held that the provisions contained in the no-action clause did not bar the right of the holder to sue upon the bond at maturity. In the case at bar there appears on every bond, including those in suit, clear and emphatic language calling the attention of the prospective purchaser or holder thereof, to the fact that the holder's right to sue at law is qualified. In the *Oswianza* case the Supreme Court, in drawing the distinction between limitations on the right to sue appearing on the face of the bonds themselves, or solely a reference to a trust deed which contains a no-action clause, cited with approval *Lidgerwood v. Hale & Kilburn Corp.*, 47 F. (2d) 318,

*Crosthwaite v. Moline Plow Co.*, 298 F. 466, and *Oster v. Buildings Development Co.*, 213 Wis. 481, 252 N. W. 168.

In the *Lidgerwood* case the language appearing upon the face of the bonds was almost identical with that appearing on the face of the debentures in this proceeding, with the exception, however, that in this case there is the additional language that "except as otherwise provided in said Trust Agreement all rights of action under this bond and the interest coupons attached are vested in said Trustee." As here, the limitation on the right to sue in the *Lidgerwood* case appeared in the no-action clause of the trust agreement which was incorporated by reference on the face of the debenture bonds. Plaintiff there sued at law on the face of the bonds and defendant moved to dismiss the complaint on the ground that plaintiff "has not pleaded performance or satisfaction of the conditions precedent set forth in the extract of the agreement just quoted. The defense is the nonfulfillment of these conditions." In dismissing the complaint, the court construed the limitations there imposed on plaintiff's right to sue and observed that the note contained defendant's undertaking to pay a set sum on a set day, subject, however, to all the provisions of the agreement between the defendant and the trustee, stated that the reference to the agreement was clear, emphatic and comprehensive, and pointed out that in order "to bind the holder beyond peradventure, the note reads, 'to all the provisions whereof the registered owner or holder, by acceptance hereof, assents.' " Similar provisions are contained in the trust agreement here under consideration.

In the *Crosthwaite* case, suit was likewise brought at law on certain debenture notes issued under a trust agreement in which defendant filed a motion to dismiss. The motion was granted. The notes specifically incorporated the terms of the trust agreement which

placed a limitation on the right of the holder to sue in a so-called no-action clause. In granting defendant's motion to dismiss, the court held that the notes and the trust agreement were not inconsistent but had to be read together in order to ascertain the provisions of the entire contract; that the provisions incorporated in the agreement were not at all unusual; that the holders of the notes under the language employed were charged with notice of all the terms of the agreement; that the notes were not secured by any property and the restrictive provision expressly deprived the noteholder of his right to proceed at law or in equity for the collection of the note, and said that "Its effect is to modify the remedy for its enforcement, and the parties to the contract—*i. e.,* the noteholders—have accepted the notes with notice of the limitation."

Likewise in the *Oster* case, where the language appearing on the face of the bond was held to be sufficient to incorporate by reference limitations on the right of individual bondholders to sue, the court enforced the limitations of the agreement and denied the noteholder the right of recovery.

Plaintiff relies principally on *Bullowa v. Thermoid Co.,* 114 N. J. L. 205, 176 Atl. 596, where the court had before it a trust agreement which specified events of default similar to those before us, but the trust agreement differed from the instant agreement in that the no-action clause contained a proviso or exception stating expressly that nothing therein should impair the obligation to pay at maturity or the right of action by the noteholder to enforce such payment; and the court held that solely for that reason the no-action clause did not apply to a bondholder's right to sue at maturity.

Plaintiff seeks an interpretation which would draw a distinction between the right of a bondholder to sue in his own name for one of the events of default set forth in the trust agreement, and his right to enforce

payment after maturity by lapse of time. The suggested distinction is largely predicated on the absence in section 1, article six of the agreement of a provision relating to *the failure to pay the bond at maturity* as an event of default, and his counsel argue that this omission should be construed to mean that the limitation on the right of the bondholder to sue is confined to the events of default specifically enumerated. However, we find from an examination of the trust agreement that section 1 of article six also provides that "if default shall be made in the payment of the principal of any of said bonds when the same shall become due and payable by lapse of time," the trustee in its own name may take such proceedings at law or in equity as may be advised by counsel to enforce the payment of the bonds and to obtain all other appropriate relief. This language unquestionably includes the trustee's right of action on behalf of the bondholder in the event of default in the payment of principal at maturity, as well as for any of the interim defaults specified in the first section of article six.

The only exception in the whole of article six to the trustee's right of action appears in section 6 thereof in the following language: "All rights of action on or because of the bonds . . . or under this trust agreement, except as hereinafter provided, are hereby expressly declared to be vested exclusively in the Trustee . . . . No holder of any such bond . . . shall have any right to institute any suit, action or proceeding for the enforcement of any of the terms of this agreement or of such bonds . . . ." This provision includes actions on the bonds or under the trust agreement, and does not except suit on bonds due by lapse of time. The exception "as hereinafter provided" in favor of an individual bondholder's action is stated in section 6 as follows: ". . . but if the Trustee shall have failed to take such action for thirty (30) days after such written notice, request,

offer of indemnity and deposit of bonds, the holder of any bond or bonds may proceed thereon.'' Plaintiff concedes that the exception noted did not happen. In fact his counsel stipulated that no demand was made upon the trustee before starting suit. A similar provision was found in the trust agreement in the *Lidgerwood* case and the court pointed out that under one of the provisions a noteholder could not sue for the enforcement of any of the covenants unless and until certain things came to pass, and held that the clause in question must apply to the defendant's covenants or agreements in the notes to pay the principal sum on maturity, ''or else ordinary language has lost its meaning.''

As an additional ground for affirming the judgment, plaintiff argues that the no-action provision cannot apply in any event because the company, by extending the agreement, so altered its terms without plaintiff's consent as to render the clause inapplicable. Judge FISHER adopted that view as one of his reasons for entering judgment in favor of plaintiff, and stated his conclusion as follows: ''If any bondholder cannot obtain the concurrence of one-fourth of the holders of the outstanding bonds to such a request he may never sue in his own name no matter how unreasonable or arbitrary the trustee would be. Here 87 per cent of the holders of the outstanding bonds entered into an agreement with the makers of the bonds to extend the period of payment for five years. There is not a fourth left to make the request or capable of making the request that the trustee should sue. By this action the defendant and other bondholders have made the condition precedent upon which the defense rests impossible of performance.'' It would be more accurate to say that plaintiff's inability to obtain the requisite number of consents is the direct effect of the contract and not the result of an unwarranted act by defendant. There was nothing unusual or illegal in asking for a

second extension. A considerable part of the indebtedness had been paid after the first extension was granted, and defendant undoubtedly believed that the balance would be liquidated within the second five-year period without suit. It must be conceded, of course, that plaintiff could withhold his consent to defendant's request, but the large majority of bondholders were equally within their rights in acceding thereto. In obtaining the consent of the large majority of bondholders, the effect on plaintiff's right to sue was the same as if no extension had been granted, and 87 per cent of the bondholders had refused to join in a demand on the trustee to enable plaintiff to obtain the required concerted action of 25 per cent of the bondholders. In any event, the request did not alter defendant's contract with plaintiff in any respect; the promise to pay still remained in the agreement, as did the original limitation on plaintiff's right to enforce that promise. (*Allan v. Moline Plow Co.* (C. C. A. 8), 14 F. (2d) 912, citing *Crosthwaite v. Moline Plow Co.*, *supra*.)

The same question was raised in the *Crosthwaite* case where more than 95 per cent of the bondholders had agreed with the debtor. Plaintiff there contended that the no-action clause would prevent any suit from being brought and therefore was not binding upon him, but the court in answering that contention said: "It is apparent, of course, that the plaintiff has not complied and could not comply with this condition precedent, as not even a small fraction of 25 per cent of the noteholders are represented here, and all others have assented to the plan of reorganization and distribution. It might be argued that plaintiff's contention only better illustrates the necessity or the force of the provision limiting the rights of noteholders to sue."

For the reasons indicated we are of opinion that the court erred in entering judgment for plaintiff, and

the judgment is therefore reversed and the cause is remanded with directions that the complaint be dismissed.

*Judgment reversed and cause remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.