First Wisconsin National Bank of Milwaukee and another, Respondents, vs. Brynwood Land Company and others, Appellants.

*September 15—October 10, 1944.*

*Maurice Weinstein* of Milwaukee, for the appellants.

For the respondents there was a brief by *Miller, Mack & Fairchild* and *Gold & McCann*, and oral argument by *Paul R. Newcomb* and *Ray T. McCann*, all of Milwaukee.

BARLOW, J. Plaintiffs allege that on or about November 1, 1933, defendant Brynwood Land Company made, executed, and delivered a trust deed to B. D. Heifetz, Ben Lewenauer, Leo Mann, and A. J. Bitker to secure the payment of a bond issue in the sum of $125,000, the mortgagor operating a public golf course on the premises; that the bonds are in default both as to principal and interest, and plaintiffs, First Wisconsin National Bank and A. J. Bitker, are the owners and holders of bonds of the par value of $35,500, with interest unpaid in the sum of $9,940. It will be seen that these do not constitute a majority of the bonds issued and outstanding.

It is then alleged that for the purpose of carrying out a scheme which the trustees named in the trust deed were not

in favor of, certain bondholders attempted to have the trustees removed, and for that purpose held a meeting and adopted a resolution removing said trustees and appointing N. B. Goldstein, B. E. Nickoll, and Sam Stahl as trustees, who now wrongfully claim to act as such trustees under the trust indenture. It is further alleged on information and belief that the defendants N. B. Goldstein, B. E. Nickoll, and Sam Stahl, together with other bondholders who also own a majority of the stock of Brynwood Land Company, mortgagor, wrongfully conspired together to deprive plaintiffs of the value of their bonds and the security for payment of the same, and to compel them against their will to accept securities in a new corporation to be organized and to transfer said mortgaged property to such new corporation, to be known as "Brynwood Country Club," which securities would be of little or no value, and on information and belief allege that the defendants last named wrongfully conspired to compel plaintiffs against their will to take for each $100 par value of said bonds $50 par value of the new bonds of an authorized issue of $100,000, together with one-half share of class B stock in the new corporation to be organized and known as "Brynwood Country Club," and to compel plaintiffs against their will to submit to a prior lien being created against the property described in the trust indenture, for the purpose of building a new clubhouse and for other playful purposes, and that the defendants last named, and others associated with them, are interested in the financial and other advantages to be gained by the building of a new clubhouse, and the organization of a new corporation to operate the same.

Plaintiffs also allege that the defendant Brynwood Land Company is still in possession of the mortgaged property and operating a golf course, and diverting the income and profit therefrom for purposes other than payment of its debts, including the debt the payment of which is secured by the trust indenture. They then ask that the defendants be enjoined and

restrained from transferring the assets of said corporation and from carrying out the plan of reorganization, and that the court appoint a receiver to have the control and management of the property, and for foreclosure and sale of the mortgaged premises in accordance with law, together with a distribution of the proceeds of said sale.

Defendants, answering the complaint, deny that the trustees named in the trust indenture are now the lawfully acting trustees, and allege that N. B. Goldstein, B. E. Nickoll, and Sam Stahl, since their appointment, have been and now are the duly appointed, qualified, and acting successor trustees under said trust indenture, with full authority as such trustees. They also deny that N. B. Goldstein, B. E. Nickoll, and Sam Stahl, successor trustees, or any of them, either alone or together with the owners of any of the outstanding bonds issued, conspired together or planned to deprive plaintiffs, or either of them, of the value of their bonds or the security for the payment thereof, or conspired together in any other way as alleged in plaintiffs' complaint. They also deny that the defendant Brynwood Land Company was in possession of the mortgaged property or was operating the same at the time the summons and complaint in this action were served upon all of the defendants herein, and deny that the defendant Brynwood Land Company or the successor trustees at any time diverted any of the income or profits from the operation of the property for any purposes other than the payment of its operating expenses or its debts without any diversion of any part thereof for any other purposes.

Defendants allege that on October 27, 1943, pursuant to due action taken at a special stockholders' meeting of the defendant Brynwood Land Company, all of the mortgaged property, together with certain additional unmortgaged assets, was transferred and conveyed to the successor trustees under the trust indenture for the sole and *pro rata* benefit of all the bondholders, by the execution and delivery of a sufficient and

adequate deed and bill of sale and by the delivery of physical possession of all of said property, and that from and after said date the successor trustees were and still are in possession of the mortgaged property and are operating the same.

Defendants also allege that under the express terms of the trust indenture the trustees are specifically empowered, in lieu of a foreclosure action and its consequent expense and delay, to accept from the mortgagor a conveyance and transfer of the mortgaged property to the trustees on behalf of all the bondholders, and upon so acquiring title the trustees have the right and power to organize a new corporation, establish and prescribe the details, powers, provisions, and terms of said new corporation and of its stock and other securities, and vest title to said mortgaged property in the new corporation in exchange for stock and securities as the trustees may determine, all of which stock and securities so received to be held by the trustees for the *pro rata* benefit of all the bondholders.

The undisputed alleged facts seem to be that on the 27th day of October, 1943, which is the date on which plaintiffs' summons and complaint were served on some of the defendants, the successor trustees accepted a conveyance of all the mortgaged property from the defendant mortgagor, Brynwood Land Company, and that it was the intention of the trustees to organize a new corporation to be known as the "Brynwood Country Club" for the purpose of conducting a private golf course and convey to the new corporation the property received from the mortgagor. The new corporation was to have authority to issue three hundred fifty shares of class A common stock and one thousand shares of class B common stock, all stock to be nonpar and have equal voting rights. The new corporation was to issue $100,000 par value first-mortgage bonds maturing ten years from issue date, bearing interest at the rate of two per cent for the first three years and three per cent from then until due,

and to be secured by a trust indenture upon all the real estate and tangible personal property of the corporation. The bondholders were to receive bonds of the new corporation of a par value of $50 for each bond of the par value of $100 of the original issue, together with one-half share of class B common stock in the new corporation for each $100 bond of the old issue. In this manner, the original bondholders would receive bonds in the new corporation of the par value of $62,500 and six hundred twenty-five shares of class B nonpar common stock for their original bonds having a par value of $125,000 and accrued interest in the sum of $42,500, the new bonds and class B common stock to be redeemable by the payment of $101 for a bond of the par value of $100 plus the surrender of one share of class B nonpar common stock. The new corporation was then to have authority to sell the balance of the first-mortgage bonds amounting to $37,500 at par, the purchaser to have the right to purchase one share of class B stock at $1 per share. The proceeds from the sale of the bonds and stock were to be placed in a separate fund under the control of the trustees of the bond issue, to be used only for the purpose of constructing a clubhouse on the corporate property, and if not so used within a specified time to be returned to the purchasers of said bonds and stock. Class A common stock was to be sold to such persons as the board of directors may from time to time determine, for the sum of $250 per share or for such amount as the board of directors may from time to time determine, and playing membership in the Brynwood Country Club could only be acquired by the purchase of class A stock.

Art. 9 of the original indenture provided that the holder of any bonds accepts the same subject to the express condition and agreement that every right of action, whether at law or in equity, under the indenture is vested exclusively in the trustees and under no circumstances were the holders of any

bonds or coupons to have any right to institute any action or suit at law or in equity, upon or in respect of the indenture, or for any other remedy unless the trustees refused to perform any duty imposed upon them, and then only if demanded by the holder or holders of at least one half in amount of the bonds secured, and by giving to the trustees indemnity satisfactory to them, securing them against liability by reason of the action requested.

Other allegations and denials in the pleadings are not considered material and are therefore not referred to.

Defendants moved the court for summary judgment dismissing plaintiffs' complaint. Defendants contend that this action cannot be maintained by the plaintiffs under the terms of the trust indenture, and the acts and proposed acts of the successor trustees are in accordance with the terms of the trust indenture and cannot be attacked by the plaintiffs. Defendants contend that plaintiffs purchased their bonds upon the express condition that any right of action in relation to the trust indenture, or to foreclose, was vested exclusively in the trustees, and rely on the case of *Oster v. Buildings Development Co.* (1934) 213 Wis. 481, 252 N. W. 168. In that case the trustees had commenced an action for the foreclosure of a trust indenture in which judgment for the entire principal amount of outstanding bonds was prayed for, together with foreclosure and sale of the mortgaged premises and the application of the proceeds of such sale to the bondholders. The plaintiffs, as individual bondholders, commenced actions at law to recover principal and interest of their bonds, and started garnishment actions against the mortgagor. The court properly held that their actions could not be maintained as the trustees had already commenced an action to foreclosure the trust indenture, including their bonds. In the instant case it is alleged that the successor trustees unlawfully refused to commence an action to foreclose and sell the property and that the successor trustees, with other owners

of outstanding bonds who are also the owners of the majority of outstanding stock of the defendant mortgagor corporation, wrongfully conspired together to deprive plaintiffs of the value of their bonds and the security for the payment thereof. Here we have a majority of the stockholders of debtor corporation charged with the control of the actions of the successor trustees, to the detriment and injury of the minority bondholders. To hold that the majority stockholders of a debtor corporation can enter into a conspiracy to defeat the rights of the minority bondholders and deprive them of a cause of action would be contrary to the almost uniform decisions of our courts. In *Poage v. Co-operative Publishing Co.* 57 Idaho, 561, 578, 66 Pac. (2d) 1119, the court said:

"That kind of stipulation, in some form or other, is not uncommon to trust deeds and mortgages, and yet an examination of the authorities leads to the conclusion that courts of equity are disposed to construe such provisions with strictness. 'Clauses of this character, restrictive of the common-law right of a creditor, who holds a plain obligation of his debtor, are not favored in law, and must be strictly construed.' *Bullowa v. Thermoid Co.* 114 N. J. Law, 205, 176 Atl. 596; . . . 2 Jones on Bonds, etc., sec. 811:"

In *Brown v. Denver Omnibus & Cab Co.* (8th Cir. 1918) 254 Fed. 560, 569, the court held that a complaint by a bondholder seeking to foreclose a trust mortgage, in which complaint it was alleged that the trustee had refused to act, that the mortgagor was in default and that the holders of a majority in interest of bonds had conspired to defraud other bondholders and to apply funds properly applicable to bonds to the payment of unsecured indebtedness, stated a cause of action for relief notwithstanding the mortgage provided for foreclosure only upon request of the majority of the bondholders, and there stated:

"The restrictive clause hereinbefore quoted, if held to prevent the appellant to institute this action, in view of the al-

legations of the complaint is void as ousting the jurisdiction of the courts. *Toler v. East Tenn. Va. Ga. Ry. Co.* (C. C.) 67 Fed. 168; *Guarantee, Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co.* 139 U. S. 143, 11 Sup. Ct. 512, 35 L. Ed. 116; *Railway Co. v. Fosdick,* 106 U. S. 47, 27 L. Ed. 47; . . . *Farmers' Loan &·Trust Co. v. Winona & S. W. R. Co.* (C. C.) 59 Fed. 957."

In *Toler v. East Tennessee, V. & G. Ry. Co.* (C. C.) 67 Fed. 168, the court at page 179, said:

"If there is any proposition well settled in the courts of the United States, it is that limitations contained in a mortgage, restricting the right of foreclosure, must be strictly construed. The provisions of the second article, which have been substantially recited, apply only to the exercise of the summary power of sale vested in the trustee, and do not purport to be exclusive of all other remedy."

It is further contended that the conveyance of the mortgaged property by the debtor corporation to the successor trustees accomplishes the same result that foreclosure would accomplish, without the expense of foreclosure. This might be true if the defendants intended to organize a corporation and take over the assets and issue stock to the bondholders *pro rata* in accordance with their interest in the property as evidenced by their bondholdings, but the complaint alleges that as part of the general conspiracy to defeat the rights of the minority bondholders, the trustees intend to organize a new corporation and issue to the bondholders only a portion of the securities authorized to be issued by the new corporation, whereby the most that they could possibly receive would be the sum of $63,125 in payment of an admitted indebtedness of $165,000. It is well settled that the trustees under a trust indenture are required to use ordinary diligence and intelligence to protect the interests of the bondholders. *Marshall & Ilsley Bank v. Guaranty Investment Co.* (1934) 213 Wis. 415, 250 N. W. 862. We are unable to see where the proposed plan complies with the foregoing rule.

Defendants argue that the pleadings, exhibits, and moving papers do not present a genuine issue of fact. It is only necessary to point out a few of several issues of fact in the pleadings. Plaintiffs allege, and defendants deny, that defendants N. B. Goldstein, B. E. Nickoll, and Sam Stahl, who claim to have been appointed successor trustees, are not such trustees, and wrongfully claim to act as such trustees. Plaintiffs allege, and defendants deny, that N. B. Goldstein, B. E. Nickoll, and Sam Stahl, together with other owners of outstanding bonds of the defendant Brynwood Land Company, being also the owners of a majority of outstanding shares of stock of said defendant corporation, wrongfully conspired together to deprive plaintiffs of the value of their bonds and the security for their payment. Motion for summary judgment must be denied where pleadings present a genuine and substantial fact issue. Sec. 270.635, Stats. *Sullivan v. State* (1933), 213 Wis. 185, 251 N. W. 251, 91 A. L. R. 877.

*By the Court.*—Order affirmed.