OPINION. Hill, Judge: In the transaction involving the exchange of petitioner’s old bonds for the securities and cash of the company under section 77 of the Bankruptcy Act, respondent contends that section 112 (b) (3) and (c) (1) of the Internal Revenue Code[1] is not applicable because (1) the issuance of 116% shares of common stock by the company in 1944 for interest due petitioner as owner of old bonds from September 1, 1933, to December 31, 1938, constituted ordinary income to the extent of $3,590.06, less $2,132.55 attributable to the period prior to petitioner’s purchase of the old bonds which respondent determined constituted a return of capital to petitioner; (2) $2,250 of the cash received by petitioner in 1944 was in effect payment of interest at the rate of áy2 per cent on the bonds issued on December 29, 1944, as though such bonds actually had been issued on January 1, 1939, and hence constituted ordinary income to petitioner during the year involved; and (3) the $1,050.75 received by petitioner on the 116% shares of common stock issued to him in 1944 was for dividends in arrears and is taxable to the petitioner as ordinary income received in that year. Petitioner argues, however, that “No portion of such stock, securities and money so received may be treated as interest and taxed as ordinary income”; that “This entire exchange meets the requirements of sections 112 (b) (3) and 112 (c) (1) of the Internal Revenue Code and should be taxed solely as prescribed therein.” This is true, he says, because his claim for interest against the debtor (the company) was an integral part of the security representing the entire indebtedness and any stock or securities or property received in exchange therefor was received in exchange for a security within the meaning of the above mentioned sections. Respondent’s basic argument with respect to contention (1) above is that in the transaction involved petitioner surrendered securities (the old bonds) plus a claim for interest in the amount of $3,590.06 which was paid by the issuance to him of 116% shares of common stock of the recapitalized company as heretofore outlined. He then adds that “because the claim for interest is not a security its surrender to the corporation for the 116% common shares cannot qualify as a tax-free exchange under section 112 (b) (3). There is no doubt that those shares of stock issued for the interest in arrears comprised part of the exchange pursuant to the plan of reorganization, as required by section 112 (b) (3). It thus appears that the answer to our problem lies in the determination of whether petitioner’s claim for interest should be considered apart from the bonds, or an integral part of the bonds so that both the principal debt and interest may be termed a “security” within the meaning of that section. After an examination of many authorities on this question, we conclude that the interest may not be considered separately from the principal debt; that each coupon is a part of each bond; and that both together constitute the security. Fletcher, in his Cyclopedia of the Law of Private Corporations, section 2734, states: However, coupons are part of a bond and are affected by its infirmity as well as endowed with its strength and their character is not changed by detaching them from the bond. In section 2737 the following appears: A coupon is part of the debt covered by the mortgage which secures its bonds; and when a coupon is detached from the bond and is owned by one person while another owns the bond, the coupon is still a lien under the mortgage. Matured coupons are “a constituent part of the mortgage debt, and an assignment of them carries with it by implication an interest in the mortgage security.” A definition of securities in section 23 of the Internal Revenue Code recognizes that the coupon is considered part of the security. Section 23 (k) (3) provides as follows: (3) * * * the term “securities” means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation * * * with interest coupons or in registered form. See also Bailey v. County of Buchanan, 115 N. Y. 297; 22 N. E. 155; Real Estate Trust Co. of Philadelphia v. Pennsylvania Sugar Refining Co., 237 Pa. 311; 85 Atl. 365; Oster v. Building Development Co., 213 Wis. 481; 252 N. W. 168, 172. It is thus apparent that there has been compliance with section 112 (b) (3). There is support for our conclusion herein in cases decided by this and other courts. In South Atlantic Steamship Line, 42 B. T. A. 705, the taxpayer in the course of the recapitalization of a corporation exchanged preferred stock upon which cumulative dividends were in arrears for new stock, bonds, and cash. The respondent contended that certain of the securities received by the taxpayer in the exchange were for dividends in arrears on the old stock and were taxable as a corporate dividend. We stated that “the right of the preferred shareholders to receive the dividend arrears was not one which could be divorced from the shares upon which it was based.” Although this case involved dividends, not interest, in arrears, we nevertheless believe the rationale controls here. See also Skenandoa Rayon Corporation, 42 B. T. A. 1287; affd., 122 Fed. (2d) 268; certiorari denied, 314 U. S. 696; Commissioner v. Food Industries, Inc., 101 Fed. (2d) 748; Humphryes Manufacturing Co., 45 B. T. A. 114; Knapp-Monarch Co., 1 T. C. 59; affd., 139 Fed. (2d) 863; 142 Fed. (2d) 456; Globe-News Publishing Co., 3 T. C. 1199; Okonite Co., 4 T. C. 618; affd., 155 Fed. (2d) 24; certiorari denied, 329 U. S. 764. Respondent argues, however, that South Atlantic Steamship Line, supra, is not authority for our conclusion in the case at bar.' He points out that we said in that case that the dividends were in arrears, but had not been declared. He reasons that, if the claim had been for dividends declared prior to the reorganization, “then such claim is separate from and independent of the stock, and must qualify or fail as a ‘security’ by reason of its own present attributes, wholly apart from its origin.” He then compares interest due on a bond to a declared dividend, concluding that neither should be considered part of the security. This argument avails respondent nothing, for, as we have pointed out before, interest due the holder of a bond is part of the principal debt which it represents. The two are not separate and may not be considered apart. We agree with respondent, however, as to contentions (2) and (3), i. e., that the cash adjustment payments do not fall within the purview of section 112 (b) (3) and (c) (1). Section 112 (b) (3) providesthat no gain or loss shall be recognized if stock or securities of a party to a reorganization are “in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation * * In the case here there was both a plan of reorganization and an exchange. But it is important to note that, although the exchange was not consummated until 1944, the effective date of the plan of reorganization was January 1,1939. Hence, we must look to that date to determine which securities were to be included in the exchange and, therefore, which securities come within the provisions of the code sections involved. Those securities were as follows: $25,000 face value of old bonds, together with interest due on such bonds in the total amount of $3,590.06, for new general mortgage. 4% per cent callable, series A, income bonds of a face value of $10,000, plus 150 shares of $100 par 5 per cent participating preferred stock, or a total par value of $15,000, plus 116% shares of common stock, the fair market value of which was stipulated at $3,590.06. The petitioner states that: * * * That date [January 1, 1939] is significant only as the starting point for the determination of the extent of the rights of all participants in the reorganization. It was not until more than four years thereafter that the Supreme Court aflirmed the decision of the District [Court] approving the plan, and it was not until its subsequent acceptance by the vote of creditors in 1943 and the entry on October 11, 1943 of an order by the District Court confirming the plan that anyone had any definitive idea of what he would get out of the reorganization. * * * That date is significant for more than being the “starting point” of the reorganization; it was the effective date of the plan. It is the rights of the participants in the reorganization as of that time that we are interested in here for the purpose of determining the applicability of the sections of the code in question. It is true that respondent, both in the notice of deficiency and the stipulation, treated the $2,371.50 cash received by petitioner with the 150 shares of preferred stock issued to him in 1944 as capital gain. This would seem to indicate that respondent agreed with petitioner that the adjustment payment should be accorded taxability within section 112 (b) (3) and (c) (1). We do not have before us the question of the correctness of such action by respondent. However, despite the fact that respondent so treated such item and thus eliminated it from our consideration here, we are convinced that under the facts and applicable law we can not do otherwise than hold that the other “adjustment payments” do not fit.within the above cited sections. All of the cases cited by petitioner, some of which were discussed and mentioned above, are distinguishable so far as issues (2) and (3) are concerned, for in none of them was there involved adjustment payments made after the effective date of the plan of recapitalization or reorganization. In view of our holding, it is not necessary to discuss the alternative issue raised by respondent. Decision will be entered vmder Rule 60. SEC. 112. RECOGNITION OF GAIN OR LOSS. ******* (b) Exchanges Solhlt in Kind.— .*•***• (3) Stock fob stock on reorganization. — No gain or loss shaU be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. *»***•• (c) Gain from Exchanges Not Solely in Kind.— (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (S), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shaU be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. [[Image here]]